(December 5, 1900.)

## JOHNSON v. OREGON SHORT LINE RAILWAY CO.

[63 Pac. 112.]

DOMESTIC ANIMALS.—The common-law rule that a man must confine his domestic animals to his own inclosure has never obtained in this state.

RAILROAD CORPORATION—FENCES—POLICE REGULATION.—The statute requiring railroad companies to fence their right of way where the same is contiguous to private property, is a police

regulation, adopted to protect human life and property for the benefit of the general public, and not for the sole benefit of adjoining or contiguous land owners.

PRIVATE PROPERTY—HOMESTEAD ENTRY.—A homestead entry, after it is entered, is private property, within the meaning of the statute requiring railroad companies to fence their track when their right of way "passes through or along or abuts upon or is contiguous to private property."

ANIMALS KILLED—DAMAGES.—In an action to recover damages for horses killed by a railroad company, it was clearly shown that if the railway company had fenced its track, as required by the statutes that plaintiffs' horses would not have wandered upon the railroad track and been injured. *Held*, that a verdict for plaintiffs was proper and should not be disturbed.

(Syllabus by the court.)

APPEAL from District Court, Bannock County.

P. L. Williams and F. S. Dietrich, for Appellant.

None of the land in question had passed to patent, or even to final proof, and the court properly instructed the jury that such land is not "private property." (*Shiver v. United States*, 159 U. S. 491, 16 Sup. Ct. Rep. 54; 40 L. ed. 231; *Kneen v. Halin*, 6 Idaho, 621, 59 Pac. 14.) The provisions of a statute requiring a railroad company to maintain fences on the sides of its track is a provision designed for the protection of adjoining owners; and that the provision may be waived by them; and that the effect of a waiver will be to exonerate the company from liability for injuries to cattle happening in consequence of the fence not being constructed according to the requirements of the statute. (Pierce on Railways, 344; Redfield on Railways, 373; *Hurd v. R. etc. R. R. Co.*, 25 Vt. 116; *Tombs v. R. & S. R. R. Co.*, 18 Barb. 583; *Jackson v. Rutland R. R. Co.*, 25 Vt. 150, 60 Am. Dec. 246.)

Winters & Guheen, for Respondents.

The laws of Idaho make possessory rights and claims real property, and lands are coextensive with real property. (Idaho Rev. Stats., sec. 16, subd. 2.) The term "property," as applied to lands, comprehends every species of title, inchoate or complete. It is supposed to embrace those rights which lie in con-

tract—those which are executory as well as those which are executed. (*King v. Goetz*, 70 Cal. 236, 11 Pac. 656; *Soulard v. United States*, 4 Pet. 511, 7 L. ed. 938.) A statute of a state imposing a duty on a railroad company to fence its track is a police power, and is for the benefit of the public, and not the adjoining land owners only. (Elliott on Railroads, secs. 1182-1190.) The weight of authority is that where the animals are wrongfully on the adjoining premises from which they escaped to the company's track, the company is liable. (Elliott on Railroads, sec. 1190; *Missouri etc. R. R. Co. v. Roads*, 33 Kan. 640, 7 Pac. 213; 23 Am. & Eng. R. R. Cas. 33; *Patrie v. Oregon Short Line Ry. Co.*, 6 Idaho, 448, 56 Pac. 82; *Stimpson v. Union Pac. Ry. Co.*, 9 Utah 123; 33 Pac. 369.)

QUARLES, J.—This action was brought by the respondents to recover from the appellants the value of seven head of horses which the appellant's train of cars ran over, mangled and killed. The case was tried to a jury, which found a general verdict in favor of the plaintiff for damages in the sum of $340. The jury also found the following special verdict: "We, the jury in the above-entitled cause, find as follows upon the special questions submitted to us: Q. 1. Did the horses in question come upon defendant's track or right of way, last before they were struck, from government land, or from land, entry, or claim of some private person? A. 1. Private or entered land. Q. 2. If you answer that the horses last came upon defendant's track or right of way from the land, claim, or entry of a private person state the name of such person. A. 2. Gibson. Q. 3. From which side of defendant's right of way did the horses last come upon the track before being killed? A. 3. Northeast. Q. 4. About where (describe where) the horses last came upon defendant's track? A. 4. Gibson, and followed track to place of killing. Q. 5. Were any of defendant's trainmen negligent or careless in handling or managing the train in question? A. 5. No negligence. Q. 6. If you answer number 5 'Yes,' state which one of said trainmen. A. 6. ———. Q. 7. If you answer number 5 'Yes,' state in what respect or how such trainmen were careless or negligent. A. 7. ———. J. B. Hicks, Foreman."

Appellant specifies three errors, to wit: (1) "The action of the court in overruling its demurrer"; (2) "the action of the court in denying its motion to strike"; (3) "the action of the court in overruling appellant's motion for a new trial." The first paragraph of the complaint alleges the corporate capacity of the appellant. The second paragraph is as follows: "That at all the times when, and at all the points where, the acts of negligence and damage hereinafter set out and complained of were committed and occurred, the track, right of way and property of the defendant company passes and then passed through and along and abutted upon and was contiguous to private property, such that the defendant company then was and is required by law to make and maintain a good and sufficient fence on both sides of its track and property, but that said defendant has at all times failed, neglected and refused to make or maintain a good or any fence on both or either side of its said track, property, or right of way, where the same passes and passed through said private property, except for a very short distance on the north side of its said track; that said defendant company never paid to the owners of said land, or to anyone, any price or reward for, or cost of, making or maintaining any such, or any fence; that the plaintiff Enoch Johnson then and there was, and now is, the owner of, and in the actual possession of, the north one-half of the north one-half of section 3 in township 9 south, of range 40 east of Boise meridian, in said Bannock county, the same being a part of the said private lands through which the said track, property, and right of way of said defendant company passes and did pass as aforesaid, and the horses of plaintiffs hereinafter more particularly described, were at the time, as hereinafter mentioned, grazing upon said land of said plaintiff Enoch Johnson by his consent and permission." The third paragraph of the complaint, after particularly describing said horses and alleging their value, then avers: "And which horses, and each of them, casually, on said date, and without any fault of the plaintiffs or either of them, but by reason of the failure, neglect, and refusal of the defendant company to securely fence the said track and property as required by law, as hereinbefore set out, strayed in and upon the track and grounds

occupied by the railroad of said defendant company, at a point near the center of the north half of section 3 in township 9 south, of range 40 east of Boise meridian, in said Bannock county, and where the said line of road of the said defendant company passes through the said lands of the plaintiff Enoch Johnson." The complaint then avers that the defendant, through its servants and agents, ran its locomotive and cars against and over the said horses, and there destroyed and killed said horses, to the damage of plaintiff in the sum of $415. And for a second cause of action the plaintiffs, after reiterating the first three paragraphs of the complaint, further allege as follows: "That the line of the track of said defendant company at the said point where the said horses came upon the said track is and was almost straight, there being no curves or cuts to obstruct the view of the enginemen and trainmen for several miles in either direction, and the said enginemen and trainmen could, with reasonable diligence, observe and see the said horses a sufficient distance from said train to have prevented striking or injuring the same, but the said agents and servants of said defendant company negligently, carelessly, and recklessly, and without any reason therefor, so handled, managed, and ran said train, cars and locomotives as to run and chase the said horses, and each of them, along and upon said track of defendant company for about one mile, and ahead of said train, and then ran said locomotive and cars against, upon, and over the said horses, and each of them, except the said brown mare, which was thereby mained and bruised so as to absolutely ruin the said mare, and as a result thereof she is of no value, all of which is to the damage of plaintiffs in the sum of $415."

To the complaint the appellant filed a demurrer upon the grounds that it did not state a cause of action; that neither the first nor second causes of action stated facts sufficient to constitute a cause of action; that paragraph 2 in the first cause of action is ambiguous and uncertain, in that it does not clearly show whether defendant's right of way passed through or abutted upon private property, or that it was the duty of the defendant to fence both sides of its right of way at the point or points in question—and pointed out other particulars in which it claimed that said complaint was uncertain. This demurrer

was overruled by the court, and this action of the court is the basis of appellant's first assignment of error. Upon this point it is argued by counsel for appellant, with much force and earnestness, that the statutes requiring railroad companies to fence their right of way where it runs through or abuts upon private property is not a police regulation, but enacted for the benefit solely of abutting land owners. Counsel for appellant argues with much seriousness that the demurrer should have been sustained because the complaint did not state with certainty, at the points upon the appellant's right of way in question, whether the abutting lands were owned by private parties in fee simple, or whether said lands were public lands in the possession of, and inclosed by, private individuals. This contention of counsel appears to us to be purely technical. But, to understand the grounds of this contention, we must keep in mind the provisions of the statute relating to fencing of rights of way of railroad companies, viz., section 2679 of the Revised Statutes, which is as follows, to wit: "Railroad corporations must make and maintain a good and sufficient fence on either or both sides of their track or property, whenever the line of their road at any time passes through or along, or abuts upon, or is contiguous to, private property or inclosed land in the actual possession of another. Railroad corporations paying to the owner of the land through or along which their road is located an agreed price, for making and maintaining such fence or paying the cost of such fence with the award of damages allowed for the right of way for such railroad are relieved and exonerated from all claims for damages arising out of the killing or maiming any animals of persons who thus fail to construct and maintain such fence; and the owners of such animals are responsible for any damages or loss which may accrue to such corporation from such animals being upon their railroad track, resulting from the nonconstruction of such fence, unless it is shown that such loss or damage occurred through the negligence or fault of the corporation, its officers, agents or employees." We will consider the first and third assignments of error together, as both raise the question, not only of the sufficiency of the complaint, but as well that of the special verdict and the agreed evidence in the case.

We think the averments of the complaint, as well as the special verdict, make it clear that the point where said horses strayed upon appellant's track is upon the private property, within the meaning and intent of said statute. It is equally clear, from the allegations of said complaint and from said special verdict, that at said point the appellant had not fenced its right of way as required by the statute. From the map made by the engineer of the appellant company, which was used upon the trial, and which is brought here by appellant by the consent of respondents, it appears that said horses came upon appellant's right of way at a point marked "11" on said map, which is upon the homestead entry of James A. Gibson, and which was entered October 22, 1898; that from this point said horses proceeded along the right of way of the appellant some two miles or more, in an easterly direction, near a cattle-guard, where they were killed. It is argued on behalf of the appellant that private property does not include a homestead entry prior to patent. We cannot agree with this contention. The laws of this state recognize such entry as private property, and make the certificate of entry primary evidence that the holder thereof is the owner of the lands therein described. (See Rev. Stats., sec. 5983.) The words "private property" in section 2679 of the Revised Statutes, quoted above, have no reference to the title as between the private owner and the government of the United States, but relate solely to the railroad corporation and the private owner. As between the railroad company and the homestead entryman, the latter, after entry, is the owner, and the homestead entry is private property.

Nor can we agree with the contention of the appellant that said statute (Rev. Stats., sec. 2679 ) was enacted solely for the protection of private abutting owners of lands. We have carefully examined the authorities cited upon this point by the appellant, and do not regard them as establishing the rule contended for. It is true that the supreme court of California, in *Enright v. Railroad Co.,* 33 Cal. 230, seems to hold to this rule. But the other authorities cited by appellant, to wit, Pierce on Railroads, 344; Redfield on Railroads, 373; *Hurd*

*v. Railroad Co.,* 25 Vt. 116; *Tombs v. Railroad Co.,* 18 Barb. 583—do not sustain this contention. The decision in *Hurd v. Railroad Co., supra,* is based largely upon the old English common-law rule that every man must confine his own cattle to his own land—a rule that has never obtained in this state. These authorities hold that where, by contract with the railroad, or for other reason, it has become the duty of the abutting or contiguous owner to fence, as between him and the railroad, his neglect in that respect does not relieve the railroad from its duty to fence when required by statute, but does relieve it from damages for stock of such abutting owner killed through his neglect to fence, or to make a sufficient fence. Mr. Pierce, in his work on Railways (one of the authorities cited by counsel for appellant), at pages 414 and 415, says: "The statute may, however, be construed to be a general police regulation, designed not merely for the benefit of adjoining owners, but for the protection of property in domestic animals generally, and for the safety of passengers who would be exposed to peril of collisions with cattle coming upon the track. When the statute is deemed to be of this character, the company is held to be under a general obligation to the public, and not under a limited obligation to adjoining land owners; and, when in default for not complying with the statute, it is liable for injuries to cattle unlawfully on the adjoining land, and coming therefrom upon its track. It is held chargeable with a breach of public duty, and liable to all persons suffering injury from its default." Mr. Redfield says: "The building of fences along the line of a railway track is, no doubt, in regard to the security of travel thereon, to be regarded as a matter of police, and a duty which the company cannot shift upon others by contracts to maintain such fences." (1 Redfield on Railroads, 494.) Mr. Elliott, in his work on Railroads, at section 1182, says: "The running of railway trains and locomotives is necessarily attended with many dangers. This results from the great force used, the large bodies placed in motion, and the rapidity with which trains are run. The object of a railway being the carrying of passengers and freight from place to place, and as the performance of such an object is necessarily

attended with many dangers, it follows that every practicable safeguard should be used and every precaution taken to prevent injury to persons or property carried. One of the sources of danger to railway trains is from collisions with animals on the track. Such danger has been recognized by nearly all our state legislatures, and their statutory enactments are for the purpose of reducing this danger as much as possible. Where any particular kind of property is inherently dangerous, or the operation of certain property is necessarily dangerous, it is within the power of the state, under what is called its 'police power,' to prescribe such regulations in the use of such property as will render consequent danger small as possible. Since imposing upon railway companies the duty of fencing their tracks is for the sole purpose of lessening the danger in running trains, it is held that the enactment of such fencing statutes is a valid exercise of the police power, and it is upon that power that such statutes rest." And at section 1190 of the same work Mr. Elliott further says: "Statutes requiring railway companies to erect and maintain fences along their rights of way rest, as we have heretofore seen, upon the police power of the state. The exercise of the police power of the state by the enactment of police regulations is for the benefit of the whole public, as a general rule. And, since statutes imposing the duty to fence upon railway companies rest upon the police power, it follows that they are for the benefit of the general public, and to this effect is the almost unanimous weight of judicial authority. Such statutes are not intended merely for the protection of the adjoining land owners, unless it clearly and unmistakably appears from the language used that it was the intention of the legislature to protect only such owners. Where the animals are unlawfully on the adjoining premises, from which they escape to the company's track, there is some conflict in the authorities as to whether or not the company is liable to the owner of such animals. The weight of authority is to the effect that the company may be liable in such cases, and this we believe to be the correct rule, although there are some authorities which hold that the company is not liable. Where the animals are on the adjoin-

ing premises by consent of the owner of such premises, there is no question as to the liability of the company." Under the authorities, we do not feel authorized to hold that the statute requires fencing merely for the protection of adjoining land owners. When the statute was enacted, Idaho was a sparsely settled territory. Large sections were unsettled, with practically no cattle or stock running at large. The legislature evidently thought it would be too great a hardship to compel railway companies to fence their tracks through the territory, and only required it in the settled portions, where horses and cattle would be found in large numbers. When we passed into statehood through the provisions of the constitution, we continued the statute in force. We cannot conclude that the legislature exercised this police power, which is so necessary for the protection of human life and private property, for private abutting or contiguous land owners only, but must conclude that it was enacted for the good of the general public.

We think that it sufficiently appears from the complaint in this action, from the special verdict of the jury, and from the agreed facts, and that part of the evidence which is in the record before us, that the loss sustained by the respondents was occasioned by the neglect of the appellant to fence its track at points where it is required by the statute to fence. It is true that the evidence fails to disclose whether the land at the particular point where the horses were killed was private property, or public lands of the United States. Yet it clearly appears that the private lands of the respondents jointly, by their own fences and connecting fences of William Banks and James A. Gibson, inclosed all of the respondents' lands north of appellant's track, with the exception of the southerly side thereof, adjoining said railroad track, and that, if the appellant had fenced its track as required by said statute, respondents' lands, jointly with those of said Gibson, north of said track, would have been entirely inclosed; hence, it is apparent that the loss of respondents resulted primarily from the neglect of the appellant to fence its track at points where it is required by law to fence. If the appellant had obeyed the police reg-

ulation adopted by the statute—had fenced its track with a sufficient fence, as required by the statute—this loss would not have been sustained by the respondents. For these reasons the verdict should not be disturbed.

The case at bar is very much like the case of *Patrie v. Railroad Co.,* 6 Idaho, 448, decided by this court, and reported in 56 Pac. 82, and, we think, should be determined by the rules therein enunciated. In that case this court said: "The controlling contention is whether, under the facts, the defendant is liable in damages because of its failure to fence its track at the points where said horses were killed. The provisions of the statutes controlling this matter are found in section 2679 of the Revised Statutes. . . . . Counsel for appellant contend that the legislative intent in the enactment of section 2679 was to require railroad corporations only to fence their roads whenever, on either side, the same are contiguous to private property which is inclosed, or to land which is not actually owned by the one who is using it, or is in the actual possession thereof, and has it inclosed. . . . . If the provisions of said section require the defendant corporation to fence its track wherever and whenever it runs through land owned by private persons, the judgment must be sustained. The intent of the legislature in enacting said section must be arrived at from a literal construction, if such construction would not result in an absurdity or inconsistency. The statute declares that a railroad corporation must make and maintain a good and sufficient fence on either or both sides of their track or property, wherever the line of road passes through or along, or abuts upon, or is contiguous to private property or inclosed land in the actual possession of another. The record shows that said track passes through private property, and we think the statute as applied to the facts of this case, is too clear to require any construction. To hold that it does not require the defendant corporation to fence its track except when and where a private person may fence his land would be injecting language into said section that is not found there, and could not be put there by a fair implication and reasonable construction. We think the record fairly shows that if the

said track had been fenced where it passes through said sections 29, 20 and 17, said horses would not have been killed. It may be said that building a fence on the east side of said track, where it passes through said private property, would be no protection to stock; that stock could pass around the ends of such fence and get upon the track. The fencing of the railroad track, when required by statute, where it passes through private property, as in this case, implies the construction of sufficient cattle-guards at the ends of such fences. (3 Elliott on Railroads, sec. 1198, and notes.) We think the record shows that said horses would not have been killed where and when they were killed if the defendant had maintained such a fence as the law requires. It is contended by counsel for appellant that there is no proof that said horses came upon the track at a point where the company was required to fence. It is admitted that they were killed on the track at points where it is the duty to fence, and the presumption is, in the absence of proof, that the animals came upon the track at such points." In the case at bar, plaintiffs turned their horses upon their own lands, where, as it appears from the record, they would have remained if the appellant had fenced its track at points where it is required by law to fence. Hence, we are constrained, under the authorities, to hold the appellant responsible in damages for the killing of said horses.

What we have said disposes of the first and third assignments of error. The second assignment of error relates to the action of the court in refusing to strike from the complaint certain matters. This assignment of error, however, is not discussed in appellant's brief, but what we have heretofore said virtually disposes of it. Some other questions are discussed in appellant's brief, which are outside of the assignments of error contained therein, and which we do not deem it necessary to consider. For the foregoing reasons, the judgment and the order denying a new trial are both affirmed. Costs of appeal awarded to the respondents.

Huston, C. J., and Sullivan, J., concur.