Points Decided.

. (April 14, 1910.)·

# FRANK BERNARDI, Respondent, v. NORTHERN PA·· CIFIC RAILWAY COMPANY, a Corporation, Appellant.

[108 Pac. 542.]

RAILROAD—DUTY TO FENCE.

(Syllabus by the court.)

1. Under the provisions of Rev. Codes, sec. 2815, it is the duty of every railroad company operating any steam or electric railroad in this state to erect and maintain lawful fences on each side of its road where the same passes through, along, or adjoining inclosed or cultivated fields or inclosed lands.

2. Until such fences shall be made and maintained, such corporation shall be liable to pay all damages which shall be done by its agents, engines, or cars, to horses, cattle, mules, or other animals on said road, regardless of whether the person operating or in charge of such engine or cars was negligent or not.

3. The language used in sec. 2815 as follows: "where the same passes through, along or adjoining inclosed or cultivated fields or inclosed lands," refers to country districts or where a railroad runs along, adjoining or through cultivated fields or inclosed lands, and was not intended to apply to municipalities or towns whether incorporated or not, unless such town was so extended as to include cultivated fields or inclosed lands other than residence lots.

4. It is clearly within the power of the legislature as a police regulation to require railroad companies to fence their track, and it is for the judgment of the legislature whether such duty shall be extended to the requirement that a railroad shall fence its road in municipalities or towns or in rural sections where the lands are not cultivated or inclosed, such as the open prairie, sage-brush and timber lands not cultivated or inclosed.

5. *Held*, under the evidence in this case that the appellant was not required to fence its road where the animal for which damages were sought entered upon the track.

6. A railroad company is not required, under the provisions of sec. 2815, to fence its road where the same runs through a narrow canyon with a public traveled road occupying almost the entire space between the ends of the ties and the foot of a precipitous mountain on one side of the track, and residences and stores occupying almost the entire space between the ends of the ties and the foot of a precipitous mountain on the other side, and there

are no cultivated fields or inclosed lands through, along or adjoining which such road runs at the place of the accident.

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. W. W. Woods, Judge.

An action to recover damages for the killing of a cow by a train operated by a railroad company, where the road was not fenced. Judgment for plaintiff. Defendant appeals. *Reversed.*

E. J. Cannon, and Featherstone & Fox, for Appellant.

Where it is impracticable or impossible for a railroad company to erect and maintain fences along its right of way, it will be exonerated from so doing. So it is uniformly held that a railway need not fence its depot grounds, and this is read into the statute by the courts as an exception to its application. (*Swanson et al. v. Melton* (Tex. App.), 17 S. W. 1088; *Beckdott v. Grand Rapids & I. R. Co.*, 113 Ind. 343, 15 N. E. 686; *Foster v. Kansas City Southern Ry. Co.*, 112 Mo. App. 67, 87 S. W. 57; 3 Elliott on Railroads, p. 442, par. 1195.)

Where it would be unlawful to erect and maintain such fences a further exception is read into the statute. So a railroad may not fence public streets or highways or crossings,. or public grounds or streets. (*Greely v. St. Paul, M. & M. Ry. Co.*, 33 Minn. 136, 53 Am. Rep. 16, 22 N. W. 179; *Ft. Wayne etc. Ry. Co. v. Herbold*, 99 Ind. 91; *Jeffersonville, M. & I. Co. v. Peters*, 1 Ind. App. 69, 27 N. E. 299; *Lake Erie & W. R. Co. v. Rooker*, 13 Ind. App. 600, 41 N. E. 470; *Rippe v. Chicago, M. & St. P. Ry. Co.*, 42 Minn. 34, 43 N. W. 652, 5 L. R. A. 864.)

A railroad is exonerated, without express exception contained in the statute, from erecting and maintaining such fences, where the public convenience demands that a particular portion of its road be left unfenced. (*Atchison, T. & S. F. Ry. Co. v. Shaft*, 33 Kan. 521, 6 Pac. 908; *Greely v. St. Paul, M. & M. Co., supra; Hilleman v. Gray's Point Terminal Ry. Co.*, 99 Mo. App. 271, 73 S. W. 220.)

Walter H. Hanson, for Respondent.

The law clearly requires that a railway must provide fences and cattle-guards, or it will be liable for all stock killed regardless of negligence, and a similar statute has been upheld by this court in the case of *Patrie v. Oregon S. L. Ry. Co.,* 6 Ida. 448, 56 Pac. 82; also in *Johnson v. Oregon S. L. Ry. Co.,* 7 Ida. 355, 63 Pac. 112, 53 L. R. A. 744.

There is nothing in the record to show that the railroad company could not build a fence along their right of way without interfering with the operation of the road, and it is incumbent upon the appellant to show this fact by competent proof, if they wish to avoid the duty imposed upon them by statute. (*Lake Erie & W. R. Ry. Co. v. Rooker,* 13 Ind. App. 600, 41 N. E. 470.)

A mere private convenience of the company of increased cost of construction is not sufficient to relieve the company from its duty to fence (Elliott on Railroads, sec. 1194); nor will any private convenience on the part of individuals be sufficient to absolve the company from fencing. (*Atchison, T. & S. F. Co. v. Shaft,* 33 Kan. 521, 6 Pac. 908.)

Counsel claim that the appellant is not obliged to erect fences or cattle-guards in Black Bear or any other town. We cite the following authorities in opposition thereto: *Coyle v. C. M. & St. P. R. Co.,* 62 Iowa, 518, 17 N. W. 771; *Cox v. Minn. S. S. M. & A. R. Co.,* 41 Minn. 101, 42 N. W. 924; 3 Elliott on Railroads, 2d ed., sec. 1195, p. 442; *Young v. Hannibal etc. Co.,* 79 Mo. 336; *Atchison, T. & S. F. R. Co. v. Shaft, supra.*

STEWART, J.—This action was commenced to recover damages for the value of a cow killed by appellant company in the operation of its railroad. The cause was tried to a jury in the district court and a verdict returned for the plaintiff. This appeal is from the judgment.

This appeal must be determined by answering the question: Was it the duty of the appellant company to fence its railroad track at the point where the cow entered upon said track?

Rev. Codes, sec. 2815, provides:

"Every railroad company operating any steam or electric railroad in this state, shall erect and maintain lawful fences not less than four feet high on each side of its road, where the same passes through, along or adjoining inclosed or cultivated fields or inclosed lands, with proper and necessary openings and gates therein, and farm crossings; and also construct and maintain cattle-guards at all highway crossings where fences are required as aforesaid, suitable and sufficient to prevent horses, cattle, mules or other animals from getting on the railroad.

"Until such fences, openings, gates, farm crossings and cattle-guards shall be duly made and maintained, such corporation shall be liable to pay all damages which shall be done by its agents, engines or cars, to horses, cattle, mules or other animals on said road, or by reason of any horses, cattle, mules or other animals escaping from or coming upon said lands, fields or inclosures occasioned in either case by the failure to construct or maintain such fences, or cattle-guards, regardless of whether the persons operating or in charge of such engines or cars were negligent or not. But after such fences, gates, farm crossings and cattle-guards shall be duly made and maintained, such corporation shall not be liable for any such damages unless negligently or wilfully done.

"If any corporation aforesaid fail, neglect or refuse for and during the period of three months after the completion of its road through or along the fields or inclosures hereinbefore named, to erect and maintain any fence, opening gates, farm crossings or cattle-guards as herein required, and after having received not less than thirty days' notice requiring them so to do, then the owner of such fields or inclosures may erect and maintain such fences, opening gates, farm crossings and cattle-guards, and shall thereupon have a right to sue and recover from such corporation in any court of competent jurisdiction, the full value of the same: *Provided*, That no recovery can be had on account of stock injured or killed which came upon said highway by reason of failure to keep such gates closed."

This statute makes it the duty of a railroad company to erect and maintain lawful fences on each side of its road "where the same passes through, along or adjoining inclosed or cultivated fields or inclosed lands." The penalty fixed by the statute for failure to erect and maintain such fences is twofold: First, the company is made liable to pay all damages which shall be done by its agents, engines, or cars to the animals named in the statute, "regardless of whether the persons operating or in charge of such engines or cars were negligent or not"; second, if the company neglect or refuse, for and during the period of three months after the completion of its road, "through or along the fields or inclosures hereinbefore named, to erect and maintain any fence, . . . . after having received not less than thirty days' notice requiring them so to do, then the owner of such fields or inclosures may erect and maintain such fences, . . . . and shall thereupon have a right to sue and recover from such corporation . . . . the full value of the same."

The statute, of which this section is a part, was approved March 13, 1907, and this section was intended to be a substitute for sec. 2680 of the Rev. Stat. which had previously been held to be unconstitutional. (*Catril v. Union Pacific Ry. Co.*, 2 Ida. 576, 21 Pac. 416.) The language, however, of this section, with reference to requiring a railroad company to fence, is very similar to the language found in sec. 2679, Rev. Stat., now sec. 2814 of the Rev. Codes; and it may be questionable whether or not the later act does not also repeal sec. 2814 of the Rev. Codes.

In the case of *Johnson v. Oregon S. L. Ry. Co.*, 7 Ida. 355, 63 Pac. 112, 53 L. R. A. 744, this court had under consideration sec. 2679, *supra*, and held:

"Under the authorities, we do not feel authorized to hold that the statute requires fencing merely for the protection of adjoining land owners. When the statute was enacted, Idaho was a sparsely settled territory. Large sections were unsettled, with practically no cattle or stock running at large. The legislature evidently thought it would be too great a hardship to compel railway companies to fence their tracks through the

territory, and only required it in the settled portions, where horses and cattle would be found in large numbers. When we passed into statehood through the provisions of the constitution, we continued the statute in force. We cannot conclude that the legislature exercised this police power, which is so necessary for the protection of human life and private property, for private abutting or contiguous land owners only, but must conclude that it was enacted for the good of the general public." And the court quotes with approval from *Patrie v. Oregon S. L. R. R. Co.*, 6 Ida. 448, 56 Pac. 82, as follows:

"If the provisions of said section require the defendant corporation to fence its track wherever and whenever it runs through land owned by private persons, the judgment must be sustained. The intent of the legislature in enacting said section must be arrived at from a literal construction, if such construction would not result in an absurdity or inconsistency. The statute declares that a railroad corporation must make and maintain a good and sufficient fence on either or both sides of their track or property, wherever the line of road passes through or along or abuts upon, or is contiguous to private property or inclosed land in the actual possession of another. The record shows that said track passes through private property, and we think the statute as applied to the facts of this case is too clear to require any construction. To hold that it does not require the defendant corporation to fence its track except when and where a private person may fence his land would be injecting language into said section that is not found there, and could not be put there by a fair implication and reasonable construction."

By the language, "inclosed or cultivated fields or inclosed lands," as used in this section the legislature clearly had in mind rural or country districts where the railroad runs through, along or adjoining inclosed or cultivated fields or inclosed lands, and did not intend to make such section apply to municipalities or towns, whether incorporated or not, unless such town was so extended as to include fields or inclosed

lands other than town lots, or to a railroad passing along or in front of town lots or inclosed lots used for residence purposes only. Had the language of this section been general and specified, "That every railroad company operating any steam or electric railroad in this state shall erect and maintain lawful fences not less than four feet high on each side of its roadbed," then the statute would have applied to the road where it runs through municipalities and towns, whether incorporated or not; and the question then might arise whether by such language it was the intention of the legislature, or whether it was in the power of the legislature, to require the railroad company to fence its road where it would be impracticable or impossible, or where it would greatly inconvenience the public or materially interfere with the operation of such road. But these objections clearly do not apply to the provisions of the statute, if it is construed as the legislature certainly intended it to be, that is, as applicable to cultivated or inclosed lands. When the legislature used this language, it did so with the purpose and intention of making said section apply to a road running through, along or adjoining cultivated fields and inclosed lands, and as said by this court in *Johnson v. O. S. L. Ry. Co., supra,* "The legislature evidently thought it would be too great a hardship to compel railway companies to fence their tracks through the territory, and only required it in the settled portions," and by the language used in sec. 2815, it is clear that the legislature was enacting said section for the protection of the public in rural and farm communities, and that the legislature did not intend to make said section applicable to municipalities and towns.

This court would not be justified in reading into the statute language which the legislature did not put there or extending the construction of the language so as to embrace conditions clearly not intended by the legislature. It is clearly within the power of the legislature as a police regulation to require railroad companies to fence their track, and it is for the judgment of the legislature whether such duty shall be

extended to the requirement that a railroad shall fence its road in municipalities or towns or in rural sections where the lands are not cultivated or inclosed, such as the open prairie, sage-brush and timber lands not cultivated or inclosed; and until the legislature does so provide, damages cannot be recovered for livestock killed upon a railroad track by agents of the company in operating its road without proving negligence. In other words, the failure to fence will not supply the proof of negligence unless it be shown that the animal killed entered upon the track at a place where the law requires the company to fence. We think this construction is clearly authorized by the further provisions of this section with reference to the right of an owner of adjoining fields and inclosures to notify the company to erect and maintain such fence, and upon failure giving such owner the right to erect such fence and sue and recover from such corporation the value thereof, for in this latter provision the legislature refers to the road "through or along the fields or inclosures," and clearly used such language with reference to rural sections where lands were inclosed as settled, cultivated or improved, such as farm lands, pastures, orchards and other sections under inclosure. (*Edwards v. Hannibal & St. Jo. R. Co.*, 66 Mo. 567.)

The statute of Missouri, under construction in the latter case, was similar to the Idaho statute, except it also specified "open prairie" in addition to where the road passed "through or along cultivated fields and inclosed lands," and in that case the court says: "It is patent from the phraseology employed in this section that it was intended to apply only to farming lands and the open prairie, and not to lands included within the limits of any incorporated town or city."

So, we conclude that by the language used the legislature intended to make such section apply to farm lands, inclosed and cultivated lands, and not to municipalities or towns, whether incorporated or not, or other sections not cultivated or inclosed, unless the lands included fields or inclosed lands other than town lots. This brings us to a consideration of the evidence in this case for the purpose of ascertaining

whether the facts bring the case within the provisions of this statute.

A branch of the Northern Pacific Railroad extends from Wallace, Idaho, to Burke, Idaho, and passes through a very narrow canyon with high precipitous mountains on either side. Along the west side of the railroad extending up this canyon is a wagon road used by the public in passing up and down said canyon. The width of the railroad right of way or the public road is not shown by the evidence. In the vicinity where the animal in question was killed the canyon is very narrow, the wagon road occupying almost the entire space between the end of the railroad ties and the foot of the mountain on the west. To the east of the railroad the houses of the residents of Black Bear, an unincorporated village, are constructed abutting against the foot of the mountain and reaching to within eight to thirteen feet of the railroad track. The evidence does not show that there are any laid-out highways across the railroad track. There is a crossing shown by the evidence just above where the accident occurred, but whether a public highway it does not appear. The railroad track in this canyon is nowhere fenced. The animal injured was kept by the plaintiff in his front yard in Black Bear; the front fence of his inclosure was about thirteen feet from the railroad track. The cow strayed from this inclosure and went upon the railroad and was on the track near the front of a store which was generally recognized as a waiting place for the railroad trains, postoffice and station. There are no cultivated lands in this canyon near where the accident occurred. Some of the residents have their houses inclosed, but it is clearly not a rural or country district or a place where the railroad company was required to fence its track, under the statute involved in this case. Whether, if the language of the statute had been general, it would have been possible to fence the road at the place where the animal in question entered upon the track without greatly inconveniencing the public and preventing the public passing from one side of the railroad to the other, we need not determine in this case, because under the statute the railroad company was

not required to fence its roadbed at the place where this accident occurred.

The judgment is *reversed*.   Costs awarded to *appellant*.

Sullivan, C. J., and Ailshie, J., concur.