668 P.2d 85

**BENEWAH COUNTY CATTLEMEN'S ASSOCIATION, INC., an Idaho corporation, Plaintiff-Appellant,**

v.

**BOARD OF COUNTY COMMISSIONERS OF BENEWAH COUNTY, Jack A. Buell, County Commissioner; Norman L. "Bud" McCall, County Commissioner; George Mills, Jr., County Commissioner; Robert M. Baltz, Sheriff of Benewah County, and Peter J. Hutchinson, Prosecutor for Benewah County, Defendants-Respondents.**

No. 13516.

Supreme Court of Idaho.

May 26, 1983.

Rehearing Denied Sept. 8, 1983.

Jerrold E. Park, St. Maries, William H. O'Riordan, Boise, for plaintiff-appellant.

Thomas C. Morris, St. Maries, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a judgment in an action brought in the nature of a declaratory judgment seeking to have declared invalid a county ordinance which prohibited livestock from running at large, from grazing on property other than that of the owner, and requiring the erection and maintenance of fences by owners of livestock. The magistrate court found the ordinance to be valid, which holding was affirmed on appeal to the district court. Likewise, we affirm.

The facts of this action are largely agreed upon and the only issues presented are questions of law. For at least 60 years, cattle and other livestock have freely roamed and grazed on unenclosed lands within Benewah County. At the initiation of this action there were some 57 cattle ranchers in Benewah County; many never fenced their lands and have allowed their cattle and livestock to freely graze and roam, although some ranchers have fenced their lands and allowed their livestock to graze only within their own fenced lands.

Apparently, prior to the enactment of the ordinance in question, no ordinance prohibited livestock from running at large.

In 1976 and 1977, drought conditions and a large addition to the number of cattle within Benewah County combined to aggravate already existing problems of stock running at large. The lower court found:

"that livestock running at large in Benewah County create serious and persistent problems to the county and its inhabitants, including: (1) pollution of water sources, (2) damage or destruction of crops, hay, fences and gardens, (3) injury to persons and vehicles on roads and highways, (4) damage to cut banks, earthfills on timber harvest roads which have been closed and seeded to reduce soil erosion and damage, (5) damage to cleared planting lines where tree seed has been planted . . . ."

In August 1977, the Board of County Commissioners of Benewah County enacted the ordinance in question here (No. 13) entitled "Benewah County Livestock Control Ordinance," which applies throughout Benewah County. The ordinance essentially prohibits the running at large of livestock, requires fencing around property upon which livestock is grazed, and provides criminal sanctions for violations. The ordinance expressly leaves unaffected civil liability arising from trespassing livestock. On this appeal, no question is raised as to the procedural validity of the adoption of the ordinance.

Plaintiff-appellant Benewah County Cattlemen's Association instituted the action, seeking a declaratory judgment that the ordinance was invalid and seeking an injunction against its enforcement. The cause was assigned to Magistrate Richard McFadden; in a well-reasoned opinion he upheld the validity of the ordinance and entered judgment accordingly. That judgment was affirmed on appeal to the district court.

On appeal to this Court, appellant cattlemen assert that the county has no authority to prohibit "open range grazing" through-

out the county, except and unless herd districts are created pursuant to I.C. §§ 25–2401 through 25–2409; that the area of control of free roaming livestock has been preempted by legislative enactments, hence the ordinance conflicts with the general law of the state in violation of Idaho Constitution, art. 12, § 2; that the ordinance is invalid as purporting to extend its effect beyond the geographic limits of the county, and finally, that the ordinance is unfair, arbitrary and unreasonable in its application to the cattlemen.

The Idaho Constitution, art. 12, § 2 provides, in pertinent part: "Any county . . . may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws." The legislature in I.C. § 31–714 has elaborated on the constitutional grant of police power to counties, stating:

> "[t]he board of county commissioners may pass all ordinances . . . not repugnant to law . . . such as are necessary or proper to provide for the safety, promote the health and prosperity, improve the morals, peace and good order, comfort and convenience of the county and the inhabitants thereof, and for the protection of property therein, and may enforce obedience to such ordinances with such fines or penalties as the board may deem proper . . . ."

This Court, in interpreting the broad statutory and constitutional powers granted to county commissioners to enact ordinances in furtherance of police powers, stated in *State v. Clark,* 88 Idaho 365, 399 P.2d 955 (1965), that:

> "there are three general restrictions which apply to legislation under the authority conferred by [ID. CONST. art. XII, § 2]: (1) the ordinance or regulation must be confined to the limits of the governmental body enacting the same, (2) it must not be in conflict with other general laws of the state, and (3) it must not be an unreasonable or arbitrary enactment."

■ As noted above, appellant cattlemen argue that the ordinance in question is invalid under the language of *State v. Clark, id.,* in that it purports to extend application of the ordinance beyond the geographical limits of the county. We disagree. The ordinance does not purport to, nor can it affect or regulate matters occurring outside Benewah County. Should livestock from outside the county wander into lands within the county, they would then come under the jurisdiction of Benewah County and be subject to its valid ordinances. The fact that their owners may reside outside the county will not alter the result.[1] Although the appellant cattlemen argue that a county must comply with herd district statute I.C. § 25–2402 by enclosing itself with fences before enacting an ordinance such as the one at issue here, we disagree for the reasons stated below in our discussion relating to the non-application of the herd district statutes.

■ Appellant cattlemen argue that since the ordinance does not expressly exempt the areas of incorporated cities within the boundaries of the county and does mention city police officers as officials charged with the enforcement of the ordinance, it constitutes an attempt by the county to exercise authority over lands located within incorporated cities and is thus void. We agree with appellants to the extent that the ordinance is without force and effect within the limits of the incorporated municipalities located in Benewah County. However, as noted in this Court's recent decision in *Hobbs v. Abrams,* 104 Idaho 205, 657 P.2d 1073 (1983), such does not invalidate the ordinance nor make it ineffective in the balance of the county. *See also Clyde Hess Distributing Co. v. Bonneville County,* 69 Idaho 505, 210 P.2d 798 (1949).

---

1. In the event that the ordinance did not apply equally to livestock owned by Benewah County residents and livestock owned by nonresidents of Benewah County, it has been held that such unequal treatment constitutes a violation of the equal protection clause of the fourteenth amendment. *Ramsey v. Martin,* 111 Fla. 798, 150 So. 256 (Fla.1933); *Motes v. Hagan,* 101 Fla. 995, 132 So. 676 (Fla.1931); *Teuton v. Thomas,* 100 Fla. 78, 129 So. 330 (Fla.1930).

■ We turn now to appellant's assertion that the ordinance is invalid in that it conflicts with the general laws of the state. The principal argument is that the legislature, by the enactment of herd district statutes, I.C. §§ 25–2401 through 25–2409, has preempted the field of control of free roaming livestock. Hence the county is prohibited from attempting to legislate on the same subject matter. At bottom appellant's position is that since livestock have for many years freely ranged and roamed within Benewah County regardless of the ownership or nature of the lands, the county may not protect its citizens and their lands and property against such livestock through the exercise of the police power. We emphatically disagree. We hold first that the legislature has not preempted the field of livestock control as asserted by the appellants; secondly, even assuming some legislative exercise of livestock control, we hold that extension or amplification of that control by county ordinance is not prohibited in the absence of constitutional or statutory provisions clearly evidencing intent on a statewide basis to permit livestock to freely roam and graze regardless of the ownership or the character of lands. We are cited to and find no such specific constitutional or legislative intent. We refrain from speculating upon the constitutional problems which might arise from the enactment of such legislation and a claim that it unconstitutionally deprived an owner of his property in violation of the due process clause.

■ Appellants' contention that the ordinance conflicts with the general laws of the state, particularly the herd district statutes, I.C. §§ 25–2401 through 25–2409, is largely answered by the recent opinion of this Court in *Maguire v. Yanke,* 99 Idaho 829, 590 P.2d 85 (1978). In *Yanke,* this Court exhaustively examined the law relating to herd districts and held that since 1963 the herd district statutes have not applied to "open range," *i.e.,* "all unclosed lands outside cities and villages upon which by custom, license or otherwise, livestock, excepting swine, are grazed or permitted to roam." I.C. § 25–2402. The Court in *Yanke* stated:

"Prior to 1963, I.C. § 25–2402 contained no definition of 'open range.' Herd districts were allowed to be created in any part of this state .... In 1963, as was previously discussed, the legislature inserted a definition of 'open range' in I.C. § 25–2402 and stated that herd districts could not be created in such area .... It is clear the amendment of I.C. § 25–2402 by the inserting of a definition of 'open range' was designed to protect the rights of livestock owners by prohibiting herd districts in areas where they historically grazed stock, rather than limiting the area where livestock owners were free to let their stock roam at large. Under our decision, herd districts may still be created in any area not within 'open range' as defined in I.C. § 25–2402."

In the instant case the unenclosed lands within Benewah County but outside cities and villages clearly fall within the definition of "open range." The magistrate so found and the evidence supports that finding; indeed it is uncontroverted. Hence, the county had no authority to create a herd district.

■ Appellant argues, nevertheless, that requiring livestock owners to fence in their livestock creates a *de facto* herd district. We disagree. Herd districts may not be created *sua sponte* by a county but only in response to a petition of a majority of the landowners within a certain area. The creation of a herd district imposes civil liability upon livestock owners when their stock trespasses on the land of another. In contrast, the ordinance here expressly provides that it shall not apply to the resolution of any civil liability, stating:

"Nothing in this ordinance is to be construed as imposing strict liability in tort against a violator. Any civil action arising from livestock running at large is to be determined on the basis of the laws pertaining to civil actions and not on the basis of a violation of this ordinance; anything contained in this ordinance to the contrary notwithstanding."

■ Hence, we hold that the purpose and effect of the ordinance in question here are different from the purpose and effect of a herd district; we therefore reject appellants' assertion that the ordinance constituted the *de facto* creation of a herd district.

■ We hold that the herd district statutes were not intended to preempt, and do not preempt, the field of livestock regulation so as to preclude local regulation. Herd district statutes which by their own terms are inapplicable to "open range" areas do not preempt the field of livestock control in such areas. *Cf. Turnage v. Gibson,* 211 Ark. 268, 200 S.W.2d 92 (Ark.1947); *Smith v. Plant,* 179 Ark. 1024, 19 S.W.2d 1022 (Ark.1929); *Sheridan v. Washington Parish Police Jury,* 67 So.2d 110 (La.Ct.App. 1953). As noted by the Court in *Maguire v. Yanke,* 99 Idaho 829, 590 P.2d 85 (1978), the creation of a herd district provides "an alternative *to landowners* who wish to protect their land from damage caused by roaming stock . . . ." Within the legislative contemplation was a process whereby a majority of the *landowners* in an area could compel the county to create herd districts and thereby place upon livestock owners within such districts the duty to fence in their stock. We find nothing in that statutory scheme indicating counties may not exercise their police power to control roaming livestock, but rather must ignore any problems and wait until action is forced upon the county by the presentation of a petition for the formation of a herd district.

■ We further note that, even if it be assumed for the purpose of discussion that the herd district statutes in some degree addressed the same problems as those addressed by the county ordinance, local enactments which merely extend the state law by way of additional restrictions or limitations are not invalid. *State v. Clark,* 88 Idaho 365, 399 P.2d 955 (1965); *Gartland v. Talbott,* 72 Idaho 125, 237 P.2d 1067 (1951); *State v. Poynter,* 70 Idaho 438, 220 P.2d 386 (1950); *Clyde Hess Distributing Co. v. Bonneville County,* 69 Idaho 505, 210 P.2d 798 (1949).

■ Although appellant claims that the ordinance contravenes I.C. § 40–702, which allows counties to create trails for cattle drives and simultaneously close highways to use for such drives, we disagree. We find nothing in the language of the ordinance which prohibits cattle drives since it proscribes allowing livestock to run "at large" and under the terms of the ordinance livestock are not "at large" if they are under the "immediate effective control" of their "custodian." Appellant also argues that the ordinance conflicts with I.C. § 25–2118, which provides that owners of animals in open range areas are not liable for damages when such animals are struck by vehicles operating on public highways. Again, we disagree since the ordinance expressly disclaims any intention to effect tort liability.

■ In conclusion, we hold: in the absence of a state legislative enactment clearly indicating that livestock must be free to roam the lands of Idaho uninhibited by the ownership or character of the lands, counties and municipalities may validly exercise their police powers to prohibit such free roaming livestock. As was well stated by Bakes, J., dissenting in *Maguire v. Yanke,* 99 Idaho 829, 590 P.2d 85 (1978):

"The open range laws resulted from the unique conditions existing during the early days of the western development when vast areas of grazing land and the sparse population then living in the area made it more practical to fence animals out of the relatively small sections of land devoted to farming than to fence cattle in on the larger grazing ranges. However, conditions in Idaho have changed substantially. This Court should not expand liability rules tailored for nineteenth century open range practices . . . when the conditions for which they were developed have substantially passed."

■ Finally, appellants argue that compliance with the ordinance would be burdensome in that appellants would be required to spend large sums of money in fencing their lands. For that reason, it is

argued, the ordinance is unreasonable and arbitrary. *See State v. Clark*, 88 Idaho 365, 399 P.2d 955 (1965). The policy determinations of legislative bodies as to how best to solve problems is best left with the discretion of the legislative body and should not be interfered with by the judiciary. We find nothing arbitrary, capricious or unreasonable in the effect of the ordinance such as to make the county commissioners' exercise of discretion subject to judicial review. Local authorities exercise their police power almost daily in the enactment of ordinances which may cast a financial burden on some of their constituents when it is perceived that such will rebound to the general welfare. Ordinances against outhouses or the maintenance of septic tanks may result in financial burdens upon householders. But if such actions are for the benefit of the general welfare, the mere fact of casting financial burdens upon some who must comply does not necessarily render such ordinances unreasonable or arbitrary. The decision as to imposing financial burdens and upon whom they shall fall is one involving policy and the exercise of our political form of government. The solution lies at the ballot box rather than with the courts.

The judgments of the lower courts are affirmed and the cause is remanded for the dissolving and termination of the restraining orders and stays entered by the lower courts. Costs to respondents. No attorney fees for this appeal.

DONALDSON, C.J., BAKES, J., and McFADDEN, J. (Ret.), concur.

BISTLINE, Justice, dissenting.

I cannot agree with the majority's conclusion that Benewah County ordinance 13 is valid. To be valid, the ordinance "must not be in conflict with other general laws of the state." *State v. Clark*, 88 Idaho 365, 374, 399 P.2d 955, 960 (1965) (interpreting Id. Const. art. 12, § 2, which provides that "any county ... may make and enforce, within its limits, all such local police ... regulations as are not in conflict with its charter or with the general laws."). Thus, the ordinance in question is obviously inval-

id if it is in conflict with the general laws of the state. In addition, if the legislature has shown its intent to occupy the field of control of free roaming livestock, "any regulation by the county [would] necessarily [be] inconsistent with the general law." *Clyde Hess Distributing Co. v. Bonneville County*, 69 Idaho 505, 510, 210 P.2d 798, 800 (1949); *see Hobbs v. Abrams*, 104 Idaho 205, 209, 657 P.2d 1073, 1077 (1983) (Bistline, J., dissenting). I believe that Ordinance 13 is invalid for both reasons—it *is* in conflict with the general laws of the State of Idaho and the legislature *has* preempted the field of livestock control.

I.

The legislature has established the "fencing out" doctrine for the State of Idaho. I.C. §§ 25–2202; 31–101 and –102; *Maguire v. Yanke*, 99 Idaho 829, 833, 590 P.2d 85, 89 (1978) ("The legal fence laws of the State of Idaho are 'fencing out' statutes.") As the Court stated in *Maguire*, "These legal fence statutes recognized the rancher's right to allow cattle to roam." *Id.* at 833, 590 P.2d at 89. The only exception to the "fencing out" rule in Idaho, arises by the creation of a herd district pursuant to I.C. § 25–2401 *et seq. See Maguire, supra.* As this Court noted in *Maguire*, Idaho's herd district statutes were enacted to provide "an alternative to landowners who wish to protect their land from damage caused by roaming stock, *but do not wish or cannot afford to fence their land*." 99 Idaho at 833, 590 P.2d at 89 (emphasis added).

Ordinance 13 also purports to establish fencing laws, but contrary to the general laws of the state, this ordinance provides for "fencing in." Section 8 of Ordinance 13 expressly provides that "[i]t shall be the responsibility of the custodian [of livestock] to erect and keep in good repair a lawful fence around the premises." R. p. 9. Violations of this section result in fines of various amounts on the first four convictions, whereas a conviction of a fifth violation "constitutes a misdemeanor [which subjects] the violator to a term in the county jail for a period not to exceed six (6)

**216**

months and/or a fine of three hundred dollars ($300.00) ...." R.p.10. Although Ordinance 13, unlike the general state laws, purports to have no effect on civil liability, the conflict between the ordinance and the general laws of the state is clear; the majority today allows Benewah County to *criminalize* conduct that this Court recently recognized was "a rancher's right" under the legal fence laws of the State of Idaho. *See Maguire,* 99 Idaho at 833, 590 P.2d at 89.

Ordinance 13 also conflicts with the general laws of the state regarding the control of livestock, in that it purports to criminalize conduct which the state law expressly allows under I.C. § 25–2118, which specifically provides that "[n]o person ... shall have the duty to keep [any domestic] animal [running on open range] off the highway on such range ...." However, section 4 of Ordinance 13 states that "[a] custodian [of livestock] shall not permit his livestock to run at large on the public roads or highways ...." R.p.9. A violation of this section results in the same sanctions as were noted above. R.p.9. Thus, although the general law of the state is that there is *no duty* to keep livestock off the highways on open range, Benewah County has made the failure to keep livestock off the highways, including those on open range, a crime. A more direct and obvious conflict can hardly be imagined. Accordingly, Ordinance 13 should be struck down as being directly in conflict with the general laws of the State of Idaho.

## II.

I am also of the opinion that Ordinance 13 should be struck down because the field of livestock control has been preempted by the legislature. The majority disposes of the appellant's preemption argument rather quickly, seeming to suggest that the appellant has argued that the herd district statutes, I.C. § 25–2401 *et seq., by themselves,* demonstrate a legislative intent to occupy the field of livestock control. In so characterizing the appellant's contention, the majority easily disposes of it, stating: "Herd

district statutes which by their own terms are inapplicable to 'open range' areas do not preempt the field of livestock control in such areas." With this bit of "analysis" and little more, the majority supports its conclusion that "the legislature has not preempted the field of livestock control as asserted by appellants."

I do not read the appellant's preemption argument as narrowly as does the majority. Nor do I think that our inquiry in this case should be whether the legislature has preempted the field of livestock control *in open range areas.* Although relying on the herd district laws as perhaps being the most demonstrative of preemption, the appellant, joined by amicus curiae, clearly relies upon the extensive scheme of regulations in the area of livestock control (not just the state herd district statutes) to support its contention that the legislature has preempted the field.

Although there is no statutory provision expressly establishing open range grazing in Idaho, the rule is, and always has been, "that with the exception of cities, villages, and herd districts, livestock may run at large and graze upon unenclosed [unfenced] lands in this state." *Maguire,* 99 Idaho at 836, 590 P.2d at 92; *Johnson v. Oregon Short Line Railway Co.,* 7 Idaho 355, 362, 63 P. 112, 114 (1900) (holding that the English common law rule that a man must confine his livestock to his own premises "has *never* obtained in this state" (emphasis added)). With the rule of open range grazing as a backdrop, the legislature has over the years established an extensive system of regulations, contained primarily in Title 25 of the Idaho Code, covering almost every aspect imaginable in the area of livestock control. Although these regulations are many, a review of a few of the more pertinent chapters contained in Title 25 clearly reflects the legislature's intent to occupy the field of control of livestock.

Contrary to what the majority opinion might lead one to believe, the legislature has devoted an entire chapter—Chapter 21—to the topic of "ANIMALS RUNNING AT LARGE." The provisions contained

therein outline in detail the specific instances in which an individual can be criminally liable for allowing livestock to run at large. *See* I.C. § 25–2106 (allowing any hog or goat to run at large "within the limits of any city ... or in the vicinity of any farm, ranch, dwelling house, or cultivated lands of another ...."); I.C. § 25–2109 (allowing any "stallion of less than $250 market cash and assessed value, ridgeling, or any unaltered mule or jackass over the age of eighteen (18) months to run at large)"; I.C. § 25–2113 (allowing "any cattle, horses, sheep or hogs to range or graze within the platted limits of any incorporated town or village of more than five hundred (500) inhabitants, between the first day of September and the first day of April, without a herder"); I.C. § 25–2115 (allowing any sheep to run at large "within the limits of any incorporated city, town, or village").

In addition to outlining criminal liability, Chapter 21 details the procedures to be followed when livestock running at large in violation of the statutes (or trespassing hogs, I.C. §§ 25–2101 to –2105) are taken up. The statutes contained in Chapter 21 generally provide for notice to be given, for reasonable charges to be paid to the person who takes up such livestock, and for the sale of such livestock if it remains unclaimed.

Chapter 21 also governs in part the civil liability resulting from livestock running at large. I.C. §§ 25–2101 to –2104 establish, in essence, a "fencing in" rule for hogs and provide that the owner of hogs is responsible for damage done by trespassing hogs. Most significantly, I.C. § 25–2118 provides that the owner or person in control of livestock on the open range "shall not be liable for damage to any vehicle or for injury to any person riding therein, caused by a collision between the vehicle and the animal." Similarly, I.C. § 25–2119, provides that "[n]o person owning, or controlling the possession, of any domestic animal lawfully on any highway, shall be deemed guilty of negligence by reason thereof."

Chapter 22 of Title 25 details more specifically the rules governing civil liability arising from livestock running at large. I.C. § 25–2202 provides a civil remedy to landowners whose property although enclosed by a legal fence, is damaged by roaming livestock, thereby confirming the long standing rule requiring the "fencing out" of livestock as a general proposition. *See Maguire,* 99 Idaho at 833, 590 P.2d at 89. I.C. §§ 25–2204 to –2208 detail the procedures by which the assessment of damages is to be made and satisfied in such cases. In addition, I.C. § 25–2201 grants an injured party a lien on trespassing stock which break into a lawful enclosure "until he is recompensed for all damages committed by said animals ...." Protections and procedures similar to those contained in Chapter 22 are contained in Chapter 23, which pertains specifically to "ESTRAYS."

Chapter 24 of Title 25 provides an exception to the general rule in Idaho that property owners must "fence out" livestock.

"Idaho and other western states provide for the creation of herd districts as an alternative to landowners who wish to protect their land from damage caused by roaming stock, but do not wish or cannot afford to fence their land.... In essence the creation of a herd district in Idaho reinstates the English common law within that district, placing a duty on the livestock owner to fence in his stock and holding him liable for damages caused if his stock escapes onto another's land, regardless of whether that land is fenced or not."

*Maguire,* 99 Idaho at 833, 590 P.2d at 89. The provisions of Chapter 24 allow the county commissioners of a county to create herd districts upon the petition of the majority of the landowners in a district, which district cannot include open range. *See* I.C. § 25–2401 to –2404. I.C. § 25–2407 establishes criminal liability for persons, who in violation of a herd district order, allow their livestock to run at large in a herd district, deeming such persons "guilty of a misdemeanor." In addition, I.C. § 25–2408 provides that in such instances the owner of the livestock "shall be liable to any person who shall suffer damage from the depreda-

tions or trespasses of such animals, without regard to the condition of his fence," and grants a lien on the trespassing animals to the injured party for the amount of damage done.

In summary, it can readily be seen that the legislature has by its extensive scheme of regulations occupied the field of control of livestock. The legislature's extensive scheme of regulations is consistent in every respect with the law that has always prevailed in Idaho, that there is generally no duty upon livestock owners to "fence in" their stock. *See Maguire, supra.* The statutes outline in detail the limited exceptions to this rule, and specifically define the circumstances under which criminal and civil liability can attach when damages are caused by roaming livestock.

The majority's conclusion that the legislature, despite its extensive scheme of regulations, has not preempted the field of control of livestock appears to rest upon three points: 1) the Court's opinion in the *Maguire* case; 2) the fact that the herd district statutes do not apply to open range; and 3) that the purpose and effect of Ordinance 13 "are different from the purpose and effect of a herd district."

The majority alleges that "[a]ppellant's contention that the ordinance conflicts with the general laws of the state . . . is largely answered by the recent opinion of this Court in *Maguire v. Yanke,* 99 Idaho 829, 590 P.2d 85 (1978)." The majority supports this conclusion by selectively quoting from the *Maguire* case, and by setting forth the "holding" in that case—"that since 1963 the herd district statutes have not applied to 'open range.'" Even were I to accept the majority's characterization of the holding of the case,[1] I could not agree that the *Maguire* case in any way answers the appellant's argument that Ordinance 13 conflicts with the general laws of the state. The majority's reliance upon the *Maguire* case is merely an extension of its assertion (discussed *infra*) that since the herd district

statutes do not apply to open range areas, they cannot preempt local regulation in the area of livestock control. Furthermore, the majority's reliance upon *Maguire* is misplaced. In *Maguire,* the Court repeatedly reiterated the long-standing rule in Idaho, that the law of this state is "that with the exception of cities, villages and herd districts, livestock may run at large and graze upon the unenclosed lands in this state." 99 Idaho at 836, 590 P.2d at 92. That the majority today affirms the abandonment of this long-standing rule of law, all the while purporting to rely upon the case in which the rule was most recently reaffirmed, will leave cattlemen and students of the law utterly amazed.

Like its reliance upon *Maguire,* the majority's assertion that the herd district statutes "were not intended to preempt, and do not preempt, the field of livestock regulation [because they do not apply to open range areas]," in no way answers the appellant's contention that Ordinance 13 conflicts with the general laws of the State of Idaho. As demonstrated above, the herd district statutes are but a part of an extensive legislative scheme of regulations, which scheme covers almost every imaginable aspect of the law pertaining to the control of livestock and *in its entirety* demonstrates the legislature's intent to preempt the field.

It is interesting that the majority makes much of the fact that the herd district statutes do not apply to open range areas, because prior to 1963 "[h]erd districts were allowed to be created in any part of this state," and the recognized purpose of the amendment of I.C. § 25–2402 to preclude the formation of herd districts in open range areas was to "protect the rights of livestock owners by prohibiting herd districts in areas where they historically grazed stock . . . ." *Maguire,* 99 Idaho at 836, 590 P.2d at 92. Scholars of the law may find it truly incredible that the Court today bases its holding that there has been

1. The holding in *Maguire* might be more properly summarized as being that the trial court in that case erred in finding that a cattle owner had a duty to keep his cattle fenced in because

the area was not one where by custom livestock were permitted to roam, thereby rendering statutory procedures for the establishment of herd districts unnecessary.

no preemption of the field of livestock regulation upon the fact that the legislature amended its statutes pertaining to the creation of herd districts and thereby limited to an even greater extent the already limited exceptions to the general rule of law requiring the "fencing out" of livestock. Rather than in any way suggesting that the legislature has not occupied the field of livestock regulation, to my mind the legislature's action demonstrates its intent to control every aspect of livestock regulation— including that upon the open range—and its continual adherence to the rule of law which has always prevailed in the State of Idaho, that except in very limited and specifically, statutorily defined circumstances, there is no duty upon owners of livestock to "fence in" their stock.

In its rejection of the appellant's preemption argument, the majority finally relies upon its "holding" in this case that "the purpose and effect of the ordinance in question here are different from the purpose and effect of a herd district." I cannot agree that this "holding" in any way negates the clear intent of the legislature to occupy the field of livestock regulation. It must be remembered, that our concern in this case is not with the herd district statutes alone, but with the entire scheme of state laws pertaining to the regulation of livestock. Furthermore, it is my opinion that the majority's conclusion or holding, can only be reached through the use of tunnel-vision, or perhaps, by a complete failure, in reading Ordinance 13, to compare it with the general laws of the state.

The majority appears to suggest that *the* purpose of the herd district statutes is to impose civil liability on livestock owners whose stock trespass on the land of another. By noting that this is not the purpose of Ordinance 13—since the ordinance express-

ly provides that it shall not apply to the resolution of any civil liability—the majority is somehow able to conclude that the legislature has not preempted the field and that Ordinance 13 is merely a permissible extension of the state regulatory scheme. Such a conclusion can be attained only if the majority ignores the fact that our concern in this case is with the *entire* legislative scheme of regulations.

Although certainly *a* purpose of the herd district statutes and other general laws of the state is to effect civil liability in cases of livestock running at large, the general laws of the state go far beyond that. The herd district statutes impose criminal liability for a violation of a herd district order and provide procedures by which trespassing animals in a herd district may be taken up. Other statutes provide similar civil and criminal liability and procedures for areas not included in a herd district. Undoubtedly, the general purpose of the herd district laws, as well as most of the statutes contained in Title 25 of the Idaho Code (all discussed more fully *supra*), can be properly summarized as being "to regulate and control the running at large of livestock." In reaching its "holding" in this case, set forth above, the majority neglects to mention that this is the expressed purpose of Ordinance 13. *See* Ordinance 13, § 4, R.p.9. The majority also, rather strangely, neglects to mention that the means set forth in Ordinance 13 to achieve its stated purpose are almost identical to the means employed in the herd district statutes and the other general laws of the state pertaining to the regulation of livestock.[2] I would be hard-pressed to conclude that these provisions of state law do not have the same purpose as the provisions of Ordinance 13— "to regulate and control the running at large of livestock." Furthermore, even were I to concede that Ordinance 13 did

---

**2.** Like many of the statutes contained in Title 25, including the herd district statutes, Ordinance 13 imposes criminal liability in certain instances in its attempt to control livestock running at large. Like the general laws of the state, Ordinance 13 sets forth procedures to be followed when animals running at large are taken up and disposed of, provides that the

owners of such animals are liable for the costs of taking up and impounding the livestock running at large; and purports to impose a duty on peace officers to enforce the ordinance. Similar provisions, previously set forth in detail in the text are found throughout Title 25 of the Idaho Code.

have a purpose different from the purpose of the general laws of the state, I could not agree that this would negate the clear intent of the legislature to preempt the field of livestock control. If the legislature has shown its intent to occupy a field of law, "*any regulation* by the county [is] necessarily inconsistent with the general law." *Clyde Hess Distributing Co., supra,* 69 Idaho at 510, 657 P.2d at 1077 (emphasis added).

I.C. § 25–2401 empowers county commissioners to create herd districts, but specifically qualifies that power by the use of the phrase "as hereinafter provided . . . ." It is clear therefore that the legislature by this language intended the procedures set forth in Chapter 24 to be *the exclusive means* by which county governing boards may exercise control in the area of livestock regulation. Since the county did not follow the dictates of Chapter 24 for creating a herd district, and there are no other provisions in the legislature's extensive scheme of regulations authorizing the county to act in this field, Ordinance 13 is in conflict with the general laws of the state and is therefore invalid.

### III.

In sum, the clear legislative intent to occupy the field of livestock regulation and the general laws of the state cause me to disagree with the majority's conclusion in this case, and I am left somewhat confused by the majority's failure in addressing the preemption issue to provide the reasoning which will support its ultimate conclusion.