ELLIS, Judge.
On July 11, 1951 the Police Jury of the Parish of Washington, purportedly acting under authority of LSA-R.S. 33:1236(5) passed an ordinance, the title of which is as follows:
“An Ordinance of the Police Jury of Washington Parish, to be known as the ‘No Fence Ordinance’, prohibiting horses, mules, cattle, hogs, sheep or goats from running, roaming, or being at large, on any of the public highways or commons, or any private land other than that of the owner of such animals, in the Fourth Ward of Washington Parish, Louisiana, (City of Bogalusa excepted), prescribing penalties for the violation of this Ordinance, and the method of procedure in such cases, and repealing all ordinances in conflict herewith.”
The plaintiffs thereafter filed this suit in which they have attacked the ordinance as being unconstitutional, illegal, null and void for five reasons, only four of which are presented on this appeal, viz. :
1. That said Ordinance is contrary to and fails to comply with Act No. 443 of 1950, LSA-R.S. 3:2801 et seq.;
2. That said ordinance attempts to invest the justice of the peace and constable of the Fourth Ward of Washington Parish with certain powers and duties, whereas there is no justice of peace or constable in said Ward of said parish, said offices having been abolished and the office of the City Judge and Marshal of the City Court having been created in their place;
3. That said ordinance attempts to prohibit plaintiffs from permitting their livestock to run at large on any lands other than their own, thus depriving them of the right to contract with other persons for the privilege of pasturing their cattle and other livestock on their lands;
4.That said ordinance is arbitrary and discriminatory in that on the same day said ordinance was passed, the Police Jury passed another ordinance wherein hogs, sheep and goats only were prohibited from running at large in the Sixth Ward of Washington Parish, which ward adjoins the Fourth Ward in which plaintiffs reside and are forced to keep up their cattle although there is no difference in the nature of the country and the reason for a stock law in the ward in which plaintiffs reside and own cattle than in the adjoining Sixth Ward.
The case was submitted on a stipulation of facts which are shown by the District Judge in his reasons for judgment to be substantially as follows:
“The case was submitted on a stipulation of facts wherein it was agreed if the plaintiffs were called as witnesses that they would testify that they reside in the Fourth Ward of Washington Parish (outside the corporate limits of the City of Bogalusa) ; that they own, raise and sell cattle and dairy products which forms the principal part of their livelihood; that they live on or near the public road; and their cattle run at large on the public highways and that it would be impracticable for them to keep their cattle off the range adjoining the public roads and at the same time permit their cattle to run at large on the public roads near their places; that they do not have sufficient lands to keep their cattle under fence and keep them off the range; that some of the plaintiffs live near the line between the Fourth and Sixth Wards; that the line dividing the Fourth Ward on the West and the Sixth Ward on the East is several miles in length; that it would be impossible for cattle to run at large in the Sixth Ward without the cattle coming over into the Fourth Ward and mingle with the cattle of plaintiffs and run at large on the premises of plaintiffs; and that it is customary in taking up cattle to use dogs for that purpose; and it sometimes occurs that dogs will injure or *112 damage cattle unless proper care is taken in controlling the dogs.”
The lower court rendered judgment in favor of the defendant dismissing plaintiffs’ suit, from which this appeal has been perfected.
As to the first ground of attack, it is admitted that the Police Jury in passing the ordinance acted under the authority of LSA-R.S. 33:1236(5), which confers certain powers on police juries and reads as follows:
“To pass all ordinances and regulations in relation to the marking, the sale, destruction of cattle in general and especially of wild cattle which are not marked and also of horses and mules; and to take any measure concerning the policing of cattle in general in all the cases not provided for by law; to fix the time in which cattle may be suffered to rove in the parishes of this state, where that custom prevails, so that such roving may not be detrimental to the crops; to determine what animals shall not be suffered to rove, and in what cases they may lawfully be killed.”
Plaintiffs’ principal ground of attack is that the above quoted paragraph has been superseded by Act 'No. 443 of 1950, LSA-R.S. 3:2801 through 2814, the pertinent portions of which are as follows:
“2801. There is hereby found and declared a necessity for providing a means whereby each ward of every parish in the state shall have the right, by local option election, to prohibit livestock from roaming at large on the public highways in each said ward. Added Acts 1950, No. 443, § 1.”
“2803. No person owning livestock shall knowingly, willfully or negligently permit his livestock to go at large upon the public highways of any ward of any parish where livestock is presently prohibited from roaming at large or any ward of any parish that shall hereafter adopt a stock law as hereinafter provided for. Added Acts 1950, No. 443, § 1.”
“2807. The provisions of this Part shall not apply to or be enforced in any ward of any parish of this state unless and until so ordered and authorized by a majority in number of the voters of said ward voting in an election held in said ward as hereinafter provided for in R.S. 3:2811.
“Any ward of any parish of this state may at any time hold a local option election as hereinafter provided for in R.S. 3:2811 provided that such election may not be held for the same ward oftener than once a year. Added Acts 1950, No. 443, § 1.”
“2811. The governing authority of the parish in which the ward is situated shall then proceed to call a special election on the question of prohibiting the type or types of livestock specified in the petition for election from roaming at large on the public highways of the ward. If a majority of the voters of the ward participating in an election called for the purpose of submitting to the voters of said ward the proposition of prohibiting the type or types of livestock specified in the petition for election, from roaming at large on the public highways of the ward, vote in favor of prohibiting said type or types of livestock from roaming at large, it shall be unlawful for the type or types of livestock specified to roam at large on the public highways of said ward, commencing six months from the date of said election. If a majority of the voters of the ward participating in the election vote against prohibiting livestock from roaming at large on the public highways of said ward then the provisions of this Part shall not apply to or be enforced in said ward. Added Acts 1950, No. 443, § 1.”
“2814. All parish or ward stock laws or ordinances, in effect on the effective date of this Part shall remain in full force and effect, it being the in *113 tention of the legislature to provide by this Part an additional method by which stock laws may be voted and enforced. Added Acts 1950, No. 443, § 1.”
Counsel for plaintiffs and defendant agree upon the proposition as stated in the brief of counsel for defendant that:
“Unless the above authority given the police juries has been superseded or modified by Act 443 of 1950, it is conceded that the police jury of its own initiative would have the right to pass a stock law in any ward or parish throughout the State. Such was the holding in the following cases: Miller v. Bopp, 136 La. 788, 67 So. 831; State v. Orr, 152 La. 1031, 95 So. 211; Boykin v. Police Jury, 169 La. 1014, 126 So. 511; Gilmore v. Harvey, La.App., 51 So.2d 146.
“To put it in a simpler form, if Act 443 of 1950, repealed [LSA-] R.S. 33:-1236(5), the Plaintiffs’ position in this case is tenable, if on the other hand, Act 443 of 1950, it is not in conflict with, nor does not supersede the former law, plaintiffs’ case must fall.”
It is clear from a mere reading of LSA-R.S. 33:1236(5), supra, that the police juries of their own initiative were given the power to pass an ordinance as they did in the present case which, when properly passed, would prohibit the livestock designated in the ordinance from roaming within the entire territory affected, whereas, under Act No. 443 of 1950 livestock could only be prohibited from roaming at large on the public highways of the territory affected.
Counsel for plaintiffs in his brief to the Supreme Court makes the following arguments and illustrations, to wit:
(1) “It is clear that by this act passed at the regular session of 1950, the Legislature made it unlawful for any live stock owner anywhere in the State to permit his live stock to run at large on the public, roads of any ward of a parish where there was a stock law in effect or where a stock law should later be adopted under the provisions of the act. It is conceded that there was no stock law in effect in the Fourth Ward of Washington Parish (outside of Bogalusa) at the time the Police Jury undertook to pass the ordinance in question in July, 1951, without an election, nor is it claimed that a stock law was ever adopted in this ward under the provisions of Act 443 of 1950. Therefore, it is clear as day that there is no law to prevent the cattle of plaintiffs from running at large in the Ward, until and unless a stock law is adopted as provided for by the act—that is by a legal local option election, which has never been held.”
(2) “To illustrate why it is evident that the later act 443 of 1950 supersedes the old Revised Statutes, Section 1236(5), [LSA-R.S.] under which the Police Jury assumed to act in passing the ordinance in question, let us assume that an election is had in this same area of the Fourth Ward under Act 443 (as it would have to be held if the necessary procedure were taken), and at this election a majority voted to have the provisions of Act 443 to apply in the Ward. Then it is evident that, without any other ordinance of the Police Jury other than promulgating the returns of the election, Act 443 would be in effect in said Ward. The situation would then be that both the Act 443 of 1950 and the ordinance of the Police Jury here in question would be in effect in the Ward (assuming that the ordinance is valid, which we deny). This would, indeed, be an anomalous, if not a ridiculous situation. How could the act and the ordinance be enforced at the same time, the state law providing for enforcement by the Sheriff and his deputies, constables, justices of the peace, and state police) while the ordinance of the police jury provides for enforcement only by the Marshal of the City Court of Boga-lusa ? Or let us assume that an election is held in said Ward under the pro *114 visions of Act 443, and the result is against the application of said act in said Ward, then it is obvious that the state law would not apply to the Ward, and there would be nothing to prevent the cattle of plaintiffs from running at large on the public highways in said Ward (outside of Bogalusa) under the plain terms of the act. Then what would become of the present ordinance of the Police Jury?”
(3) “If the power of police juries to pass stock laws given in [LSA-] R.S. 33:1236(5) has not been superseded by the later Act 443 of 1950, the Legislature has created an inconsistent and a ridiculous situation by making it possible for a police jury to nullify an act of the Legislature, as illustrated in the printed brief. It is not a purely hypothetical situation to say that if the voters of a ward follow the act which the Legislature passed and vote to prohibit livestock from running at large on the public highways, or vote not to prohibit livestock from running at large, then, if the police jury powers have not been superseded in this respect by the act, the police jury could nullify the results of the vote by an ordinance prohibiting livestock from running at large in the ward, even though the voters have voted not to prohibit such livestock from running at large on the public highways.”
(4)~ “The third reason for saying that Act 443 of 1950 supersedes the powers given the police juries under the prior law is, as already stated, that this act is placed in that Chapter of the Revised Statutes relating to animals running at large and in which chapter this whole subject matter is intended to be covered.”
(5) “If the police jury ordinance is valid, it will be enforced by the Marshal of the City Court of Bogalusa, whereas, if the voters of the Fourth Ward (Outside Bogalusa) vote a stock law under Act 443 of 1950, there will be two stock laws in the Ward, one enforced by the Marshal of the City Court of Bogalusa, and the other enforced under Act 443 of 1950 by the Sheriff, Deputy Sheriff, Constable, justice of the peace, State police, etc. (Section 2804, 2805 and 2806), there being different penalties and methods of procedure provided in the police jury ordinance and that provided in Act 443. To say that such a situation would be inconsistent is putting it mildly.”
Counsel’s argument No. 1 above is based upon Section 2803, supra, Act No, 443 of 1950, LSA-R.S. 3:2803, and if this Section only was taken into consideration his argument would be forceful, however, it is necessary to consider all provisions of Act No. 443 of 1950 to determine whether its provisions were exclusive under the savings clause which is Section 2814, supra. The legislative intent is clearly expressed to the effect that Act No. 443 of 1950 which is designated as Part 6, was intended to provide an additional method by which stock laws may be voted and enforced. It is necessary that this express provision of the Legislature be given full force and effect, and therefore Section 2803 must be interpreted so as not to disturb the expressed intent of the Legislature. By enacting Section 2803 the Legislature could not have intended that unless at the time of its enactment the police jury had passed an ordinance under LSA-R.S. 33:1236(5), that the police jury could not thereafter take advantage of the provisions of the last cited law.
As to the illustration set forth in No. 2 above, it is possible that such a thing could happen but not probable, for it would be ridiculous and unnecessary and a waste of time and money for an election to be had under Act No. 443 of 1950 to prohibit livestock from roaming on the highways if there was already in effect an ordinance of the police jury under LSA-R.S. 33 :1236(5). The greater includes the lesser, in other words, if there was an ordinance prohibiting the roaming of cattle at large in the entire ward, such an ordinance would cover any highways within the limits of the ward. *115 As to the second assumption in No. 2 above to the effect that should an election be held in a ward under the provisions of Act No. 443 and the result be against the application of the Act in the Ward, and assuming that previous to this election the police jury had passed an ordinance affecting the entire Ward under LSA-R.S. 33:1236(5), counsel argues, “ * * * then it is obvious that the State Law would not apply to the Ward and there would be nothing to prevent the cattle of plaintiffs from running at large on the public highway in said ward * * * ”, and he then asks the question, “what would become of the present ordinance of the Police Jury?” We are not faced with this problem at this time and do not believe that we will ever be faced with such a problem as such a situation is inconceivable and it would be a vain and useless thing to call an election under provisions of Act No. 443 of 1950 if an ordinance was already in effect under LSA-R.S. 33 :- 1236(5).
As to No. 3 above, it is true that if LSA-R.S. 33:1236(5) has not been superseded by Act No. 443 of 1950 a police jury, after an unsuccessful attempt to prohibit the running of livestock at large on the public highways by an election under Act No. 443 of 1950, could pass an ordinance under LSA-R.S. 33:1236(5). In other words, there are now two ways in which livestock can be prohibited from running at large on the public highways, one, by the passage of an ordinance of the police jury as was done in this case which, in affecting an entire ward or a portion of a ward, would include all public highways within the limits of the ward or portion thereof affected by the ordinance, and, two, by means of an election under Act No. 443 of 1950 which is an additional means of preventing livestock from running upon the public highways.
As to No. 4, Act No. 443 of 1950 is placed in a chapter of the LSA-R.S. relating to animals running at large and it was the intention of the Legislature for this chapter to cover the whole subject matter. Other than the fact that LSA-R.S. 33:1236(5) is not contained therein, there is no other basis for such an argument.
As to No. 5 above, the Marshal of the City Court of Bogalusa, under the provisions of LSA-R.S. 13:1870 is vested with the same powers as constables and it is well settled that the latter enjoy practically the same powers and authority in the enforcement of the law as that possessed by a sheriff. Counsel further cites the case of Connell v. Commission Council of Baton Rouge, 153 La. 788, 96 So. 657, in support of his argument that Act No. 443 of 1950 supersedes or repeals LSA-R.S. 33:-1236(5). In our opinion, this case is not apposite or applicable or controlling as the facts and the law are entirely different. In the case under consideration the Legislature clearly stated that the provisions of Act No. 443 of 1950 were intended to be used as an additional method by which stock laws may be voted and enforced insofar as prohibiting livestock from roaming at large on the public highways, the other method being under LSA-R.S. 33:1236(5). While the case cited was by a divided' court on a question entirely different from' that presented herein, the Court held that by the express provisions of a subsequent law the principal right of the City of Baton-Rouge to grant to railroads the right to use the streets of the City without a referendum vote had been repealed.
In our opinion, the two provisions, of the law under consideration do not conflict and it was not the intention of the Legislature that Act No. 443 of 1950 should repeal or supersede LSA-R.S. 33:1236(5).
Counsel for the defendant in his brief presents a most forceful argument as to. why the Legislature meant exactly what it said by the savings clause in Act No. 443-of 1950 and we quote:
“It would indeed have been illogical for the Legislature to state that it wanted to provide an additional method by which stock laws may be voted and enforced, and then in the same Act destroy, by repeal a much stronger and more effective law on the same subject. *116 matter. (LSA-R.S. 33:1236(5) Thus their actions, would not have been to furnish an additional method, but would have substituted a method, much weaker and ineffective, because the provisions of Act 443 of 1950 only extend to the highways of the wards and parishes.”
•Counsel for plaintiffs in commenting upon the position of the trial judge as to the saving clause, Section 2814, had the following to say:
“The last section of Act 443 of 1950 repeals all laws or parts of laws in conflict with the act except as therein otherwise provided. The trial judge took the position that the saving clause, Section 2814, had the effect of retaining the authority given police juries to pass stock laws under [LSA—] R.S. 33:1236(5) without a vote of the people of the ward. This Section provides that all parish or ward stock laws or ordinances in effect on the date Act 443 became effective shall remain in full force and effect, it being the intention of the Legislature to provide an additional method by which stock laws may be voted and enforced. We say the purpose of this saving clause was to preserve all stock laws and ordinances in effect at the time the act became effective.
“This interpretation of this clause is necessary so as to prevent the provisions of the act from becoming inconsistent, and even ridiculous. This clause can only be so interpreted for the following reasons: (1) Section 2803 specifically makes it unlawful for livestock to run at large on the public highways in a ward of a parish in only two instances; viz., where livestock at the time of the passage of the act was prohibited from roaming at large under laws and ordinances then in effect, or in a ward of a parish that should thereafter adopt a stock law in accordance with the’ act (nothing being said about stock laws that should thereafter be adopted 'by police juries under [LSA-] R.S. 33:1236(5). The irresistible conclusion is that, since there was no stock law in effect at the time the act was passed, and no stock law having thereafter been adopted as provided for in the act, there is now no law in the Fourth Ward (outside of Bogalusa) to prohibit livestock from running at large on the public highways.”
While this contention has been somewhat discussed heretofore, it is our opinion that the portion of Sec. 2803 which states that it shall be unlawful for a person owning livestock to permit it to go at large upon the public highways of any ward of any parish where livestock is presently prohibited from roaming at large was unnecessary or mere surplusage when viewed in connection with the express intent of the Legislature as set forth in Section 2814. In other words, we adopt the interpretation that Act No. 443 of 1950 is merely an additional method by which livestock may be prohibited from roaming at large on the public highways. It then follows that in all wards or portions of a ward in which the police jury had enacted an ordinance under LSA-R.S. 33:1236(5) it would have been unlawful for such livestock to roam at large upon the public highways, and it was therefore unnecessary and surplusage for the Legislature to include the provision in question. Further, to interpret the provision contained in Section 2803 as exclusive or prohibitive of subsequent enactment under the provisions of LSA-R.S. 33:1236(5) would be destructive of the clear and expressed intention of the Legislature as shown in the saving clause, Sec. 2814.
That provision of Act 2803 which makes it unlawful for livestock to roam at large on the public highways of any ward of any parish where livestock is presently prohibited, would not prohibit the subsequent passage of such a provision by the Police Jury under LSA-R.S. 33:1236(5).
Counsel also calls to our attention the fact that nothing is said about stock laws that should thereafter be adopted by police juries under LSA-R.S. 33:1236(5) in Sec *117 tion 2803. This is true and it would appear that the Legislature, having failed to prohibit such action by the police juries and, in fact, in Sec. 2814 having clearly set forth its intention of providing an additional means of prohibiting livestock from roaming on the public highways when it enacted Act No. 443 of 1950, it clearly had no intention of repealing or superseding LSA-R.S. 33:1236(5). Had the Legislature not intended for both provisions of the law to remain in full force and effect, it would have been a very simple ¡jing for it to have provided for the repeal of LSA-R.S. 33:-1236(5).
As to the third ground of attack presented on this appeal, we agree with the conclusion of the trial judge in his written reasons as follows:
“ * * * In the first place, the ordinance does not prohibit stock from running on the land of another with his consent, and in the second place, the whole tenor of the law contemplates the enclosure of livestock within fences, and I am of the opinion the law could not and would not prohibit any owner of livestock from leasing the land of his neighbor, which was enclosed, for the purpose of his cattle grazing thereon, and accordingly I consider this ground without merit.”
As to the fourth ground that the ordinance is arbitrary and discriminatory because the police jury on the same day passed an ordinance affecting the Sixth Ward of Washington Parish in which only hogs, sheep and goats were .prohibited from running at large, the police jury was vested with such authority and, in fact, could enact an ordinance in one ward and fail or refuse to pass such an ordinance affecting an adjoining ward.
It is our opinion that the two acts under consideration do not conflict and that the Legislature, realizing the difficulty in obtaining the passage of a livestock ordinance by police juries under the provisions of LSA-R.S. 33 :1236(5) and the many deaths caused by livestock running at large upon the public highway, secured the passage of Act No. 443 of 1950 and expressly labeled it as an additional method to prohibit livestock from roaming at large upon the public highways. It did not intend for Act No. 443 of 1950 to supersede or repeal by any of its provisions, LSA-R.S. 33:1236(5).
For the above reasons, the judgment of the District Court should be affirmed.