394 P.2d 160

**Robert J. SORAN, Plaintiff-Respondent,**

**v.**

**Carl SCHOESSLER, Defendant-Appellant.**

**No. 9389.**

Supreme Court of Idaho.

July 17, 1964.

Harry B. Turner, Twin Falls, for appellant.

Murphy, Schwartz & Cunningham, Twin Falls, for respondent.

**428**

SMITH, Justice.

Appellant (defendant) has appealed from a judgment rendered in favor of respondent (plaintiff) for damages to respondent's automobile resulting from collision on a public highway with a yearling heifer calf owned by appellant.

Respondent in his complaint alleges that while driving his automobile at about 6:00 o'clock p..m., October 20, 1961, on a public highway appellant's heifer calf suddenly ran in front of and collided with respondent's automobile causing it to be damaged; and that the collision and damage were the direct and proximate result of appellant's negligence in allowing the calf to be on a public highway at night and in failing to keep his cattle in a properly fenced enclosure.

Appellant denied the allegations of damage and negligence; by affirmative defenses he alleged contributory negligence on the part of respondent and that respondent had the last clear chance to avoid the accident.

Appellant, by his assignments of error, questions the sufficiency of the evidence to support the trial court's findings, conclusions and judgment. The assignments require a review of the evidence.

On October 20, 1961, respondent, with his family, was driving his automobile in an easterly direction on an improved county highway known as the Base Line Road toward Gannett, in Blaine County, Idaho, when he suddenly observed an unattended calf crossing the highway some 10 to 20 feet in front of him. Driving at a speed of 40 to 45 miles per hour, respondent applied his car brakes but was unable to avoid colliding with the animal. The accident occurred between 5:00 and 6:00 o'clock p. m., at approximately dusk; the weather was overcast and a light rain was falling. Respondent had his car lights turned on.

The calf, owned by appellant, had been pastured on appellant's 120-acre tract of pasture land extending east and west along the south side of the Base Line Road, enclosed by a fence, partly of woven wire and partly of barbed wire strands; the fence varied in height from 36 to 46 inches. This land was neither open range, I.C. § 25–2118, nor located in an area designated as a herd district, I.C. § 25–2401 et seq.

May 15, 1963, after a trial without a jury the court rendered judgment in favor of respondent for $650.61 as damages to his automobile. The trial court found in effect (1) that the accident occurred in a farming locale with fields on either side

of the highway enclosed by fences; (2) that "At one time" the heifer calf involved in the accident was pastured on appellant's land; (3) that the fence maintained by appellant was between "32 and 46 inches high and did not contain stays"; (4) that "The fence posts were not set substantially in the ground and were rotted at the ground causing many posts to lean perceptibly." The court then concluded:

"The defendant [appellant] failed to act as a reasonable and prudent person with respect to the maintenance of his pasture fence and in allowing his livestock to be on a public highway when sight severely was impaired by the lack of light and rain and is guilty of negligence."

■ Appellant assigns as error the finding that "At one time" his heifer calf involved in the accident was on the fenced pasture land maintained by appellant. Such finding is based upon the undisputed testimony of a Mr. Beecher who was looking after appellant's stock at the time the accident occurred; he testified:

"Q. Did you ever see this calf that was killed?

\*  \*  \*  \*  \*  \*

"A. Yes, I was the one that removed it.

"Q. Was this one of Mr. Schoessler's [appellant's] critters? A. Yes.

"Q. Had it at one time or other been in the field you speak of [appellant's pasture land] where the cattle had been running? A. Yes."

Such assignment is without merit.

■ Appellant assigns as error the finding that the pasture fence was between 32 and 46 inches high; but he does not question the additional finding that the fence did not contain stays. The finding differs somewhat with the evidence as to the varying height of the fence, in that the evidence is to the effect that the fence was between 3½ to 4 feet high. The variance is harmless inasmuch as the important issue to be resolved is not in determining the height of the fence but its condition. See generally I.C. §§ 35–101 and 35–102.

■ Appellant next assigns as error the finding that "The fence posts were not set substantially in the ground and were rotted at the ground causing many posts to lean perceptibly." The testimony of respondent and appellant, when taken together, amply supports this finding. Respondent (referring to appellant's pasture fence to the north of the highway from the point of collision) testified:

"A. Well, in my estimation, it was in disrepair. It was capable of holding animals but it was in such a state

of repair that it was possible for an animal to get through it.

"Q. When you say * * * it was in a poor state of repair, upon what do you base that?

"A. Well, the wires, some of them, were slack, and some of the posts were leaning pretty badly.

"Q. When you say the posts were leaning, were they wooden posts?

"A. Yes, wooden posts."

"Q. They would be leaning to what extent?

"A. * * * Probably fifteen to thirty degrees. Possibly some of them more.

* * * * * *

"Q. What did you observe with reference to whether the barbed wires were tight and taut?

"A. They weren't taut on this particular fence at that time.

* * * * * *

"Q. Was it more slack than ordinarily average?

"A. Yes."

■ Appellant's testimony, on cross-examination, relating to this pasture fence, is as follows:

"Q. Mr. Schoessler, I take it that you observed this fence rather closely after you got home and found out one of your calves had been killed. Did you check the fence?

"A. Yes, * * *.

"Q. About how far apart were the fence posts of this fence?

"A. Approximately twelve to thirteen feet.

"Q. Were they all substantially in the ground?

"A. Well, there was a few of them that were getting weak.

"Q. They were not substantially in the ground?

"A. No, they weren't.

"Q. As a matter of fact, there were a few of them that were rotted off at the bottom?

* * * * * *

"A. Not a number of them I wouldn't say. I would say probably one here and there.

* * * * * *

"Q. And about how many posts would you say there was in this fence * * *.

"A. I would say forty posts.

"Q. And every here and there was one rotted off * * *?

"A. Yes.

"Q. Were there any stays in the barb wire portion of the fence?

"A. No."

The evidence thus adduced is sufficient to support the trial court's finding that, at the time of the accident, the fence, owned and maintained by appellant to enclose his cattle, was in a state of disrepair; also, sufficient to show that it failed to conform to the standards prescribed by I.C. §§ 35–101 and 35–102 for lawful fences.

■ Appellant contends that no Idaho statute imposes an affirmative duty on livestock owners to fence their livestock except in those areas in which herd districts exist; that "so long as there is no statutory provision requiring the defendant to enclose his livestock, there is no duty to do so." Appellant also contends that the Legislature, by enacting I.C. § 25–2119 in 1961, "intended to relieve livestock owners of liability under circumstances set forth in the statute." That section of the statute reads:

> "No person owning, or controlling the possession of, any domestic animal *lawfully* on any highway, shall be deemed guilty of negligence by reason thereof." (Emphasis supplied.)

We point out, however, that in 1961 the Legislature enacted the additional section of the statute, I.C. § 25–2118, which reads:

> "No person owning, or controlling the possession of, any domestic animal running on open range, shall have the duty to keep such animal off any

highway on such range, and shall not be liable for damage to any vehicle or for injury to any person riding therein, caused by a collision between the vehicle and the animal. 'Open range' means all unenclosed lands outside of cities, villages and herd districts, upon which cattle by custom, license, lease, or permit, are grazed or permitted to roam."

There was no evidence adduced in this cause to show that in the particular area where the accident occurred, appellant's cattle, by custom, license, lease, or permit, were grazed or permitted to roam on unenclosed lands such as are referred to in such section of the statute.

■■ As hereinbefore stated the fenced pasture land, owned by appellant, was neither open range nor located in a herd district area. The evidence shows that appellant had allowed the fence to deteriorate and that at the time of the accident involved in this cause the fence did not conform to standards prescribed for fences, I.C. §§ 35–101 and 35–102; the evidence supports the findings in that regard; also it sustains the trial court's conclusion that appellant "failed to act as a reasonable and prudent person with respect to the maintenance of his pasture fence and in allowing his livestock to be on a public highway"; that respondent acted as a reasonable and prudent person at the times mentioned;

**432**

that appellant was guilty of negligence in the premises, and that such negligence constituted the proximate cause of respondent's damage. The judgment, being supported by substantial evidence, will not be disturbed on appeal, I.C. § 13–219; Janinda v. Lanning, 87 Idaho 91, 390 P.2d 826 (1964).

The judgment is affirmed. Costs to respondent.

KNUDSON, C. J., and McQUADE, McFADDEN and TAYLOR, JJ., concur.