590 P.2d 85

Jack MAGUIRE, Plaintiff-Respondent,

v.

Sheldon YANKE, Defendant-Appellant.

No. 12596.

Supreme Court of Idaho.

Dec. 5, 1978.

Rehearing Denied Feb. 28, 1979.

James B. Donart, Ketchum, for defendant-appellant.

Michael G. Brady of Robson, Croner & Brady, Boise, for plaintiff-respondent.

DONALDSON, Justice.

In 1975, Claude Porter leased a tract of property located in Blaine County from McCulloch Properties, Inc. The McCulloch property is situated approximately one and three-quarter miles west of Hailey, Idaho. The property is intersected by the Croy Creek Road which runs in an east-west direction across the property. On June 6, 1975, Porter subleased to the plaintiff-respondent Maguire, some 82 acres located on the south side of Croy Creek Road. The 82 acres were described as hay and alfalfa land, and Maguire used the property for raising hay. The hayland was surrounded by a fence but the fence was in a state of disrepair. Sometime in June 1975, Porter subleased to the defendant-appellant Yanke the property on the north side of Croy Creek Road. This property was pasture land and was also fenced. The lease agreement between Yanke and Porter provided that Yanke would pasture cattle on the land, and Yanke would maintain the fence around the pasture to ensure confinement of his livestock. In June 1975, Yanke moved 130 cows, 130 calves, and 8 bulls into the pasture. The Yanke and Maguire properties were not located in a herd district. Testimony was received that the area had been historically one of enclosed lands.

On numerous occasions between mid-July 1975 and August 2, 1975, several of Yanke's cattle broke through the pasture fence and strayed onto Maguire's alfalfa land south of the road. On August 2, 1975, a major breakout of Yanke's cattle occurred, and approximately 137 head of cows and calves entered Maguire's hayfield. At the time, Maguire had baled hay in the field which was substantially damaged by the cattle. Substantial damage was also done to the growing second crop of hay. When Maguire learned of the breakout, Yanke was called and the cattle were promptly removed.

Maguire thereafter filed this action against Yanke for damages. Maguire sought $3,818 actual damages and $10,000 punitive damages. The district court awarded Maguire a judgment of $3,818 to compensate him for his actual damages. The district court refused to allow any punitive damages, finding that Yanke had not acted wilfully. In finding that Yanke was liable for the damages done by the cattle to Maguire's hay and land, the district court stated in its conclusions of law:

I

It was the lawful duty of Yanke to maintain his fences so that his cattle would not escape through the same. This duty arose through the agreement with Porter as well as the fact that it was illegal for Yanke's cattle to trespass upon the county road.

II

In addition to Conclusion No. 1, it was the duty of Yanke to keep his cattle fenced in because this was not an open range area, and was an area of enclosed lands. See, I.C. 25–2118 and *Soran v. Schoessler*, ([87] Idaho [425]) 394 P.2d 160.

## I

The trial court reasoned that Maguire had no duty to fence Yanke's cattle off his property, since it bordered on a county road which cattle could not legally trespass upon; and in addition that it was Yanke's duty to keep his cattle fenced in because the land was situated in what was historically an area of enclosed lands and not in open range.

Yanke contends the trial court erred in allowing Maguire recovery for damage to his crops caused by Yanke's cattle when Maguire's land is not located in a herd district or enclosed by a legal fence. Yanke argues that, with the exception of herd districts and liability to motorists for livestock that stray on highways, it is a long-standing rule in Idaho that livestock are permitted to roam and graze upon unenclosed lands without any liability accruing to the owner of the livestock for damage caused by them.

A review of the law relating to the liability of an owner of livestock for damage caused by his stock straying on another's land is necessary to the resolution of the issues presented in this case. At common law it was the duty of the owner of livestock to fence them in, and no duty was placed upon the adjoining landowner to fence them out. 4 Am.Jur.2d Animals § 49 (1962); Restatement (Second) of Torts § 504(1) (1976). The owners of livestock were liable for the damage caused by their stock straying upon another's land whether the land was enclosed or not. An early English case stated the rule as follows: "[W]here my beasts of their own wrong without my will and knowledge break another's close I shall be punished, for I am the trespasser with my beasts . . . for I am held by the law to keep my beasts without their doing wrong to anyone." W. Prosser, Handbook of Law of Torts 496 (4th ed. 1971), quoting 12 Hen. VII, Keilwey 3b, 72 Eng.Rep. 156.

Western cattle states generally rejected the common law, holding that livestock roaming at large committed no trespass when they strayed on unenclosed private land.[1] See Scott, The Range Cattle Industry: Its Effect on Western Land Law, 28 Mont.L.Rev. 155 (1967). Idaho, concurring with the approach of its neighboring states, also rejected the common law rule. *Kelly v. Easton*, 35 Idaho 340, 207 P. 129 (1922); *Johnson v. Oregon Short Line Ry. Co.*, 7 Idaho 355, 63 P. 112 (1900). The Idaho rule was stated as follows: "The common-law rule that every man must confine his own cattle to his own land does not obtain in this state, and in *Strong v. Brown*, 26 Idaho 1, 140 P. 773, 52 L.R.A.,N.S., 140, Ann.Cas. 1916E, 482, it is held that under our statute (C.S., c. 82), if a landowner fails to fence out cattle lawfully at large, he may not recover for loss caused by such livestock straying upon his unenclosed land." *Kelly v. Easton*, 35 Idaho at 344, 207 P. at 130 [citations omitted]. However, one who willfully and deliberately drives his stock upon the lands of another, whether enclosed or unenclosed and grazes them upon such land without the permission of the owner, is liable in damages for the trespass. *Lazarus v. Phelps*, 152 U.S. 81, 14 S.Ct. 477, 38 L.Ed. 363 (1894); *Swanson v. Groat*, 12 Idaho 148, 85 P. 384 (1906).

In an effort to provide a remedy for landowners whose property was damaged by roaming cattle, most western states including Idaho passed fence laws. Idaho Code §§ 35–101 and 35–102 define what constitutes a legal fence, prescribing standards relating to height, length, number of rails and materials. Idaho Code § 25–2202 provides that a landowner who encloses his property with a legal fence has a cause of action against the owner of animals that break the enclosure.[2] The United States

---

1. Ariz.Rev.Stat. § 3000 (1901); Mont.Penal Code, 1895 §§ 1185–1187; Nev.Comp.Laws §§ 4884–4885 (Cutting, 1900); N.Mex.Comp. Laws §§ 59–60 (1884); N.Dak.Rev.Codes §§ 1544–49, 7508 (1895); Wyo.Laws, 3rd Legis. Sess., ch. 50, § 3 (1873).

2. "25–2202. Animal breaking inclosure—Recovery of damages.—If any animal before mentioned breaks into any inclosure or through any fence conforming to the requirements of chapter 1 of title 35, the owner of such animal must, for such trespass, pay to the party injured the

Supreme Court, commenting on a Texas fence law, in *Lazarus v. Phelps*, 152 U.S. at 85, 14 S.Ct. at 478, states the object of such fence statutes:

As there are, or were, in the state of Texas, as well as in the newer states of the west generally, vast areas of land, over which, so long as the government owned them, cattle had been permitted to roam at will for pasturage, it was not thought proper, as the land was gradually taken up by individual proprietors, to change the custom of the country in that particular, and oblige cattle owners to incur the heavy expense of fencing their land, or be held as trespassers by reason of their cattle accidentally straying upon the land of others.

■ The legal fence laws of the State of Idaho provide a remedy to the landowner whose property, although enclosed by a legal fence, is nonetheless damaged by roaming cattle. Contrary to the finding of the trial court in the instant case, the legal fence laws of the State of Idaho are "fencing out" statutes. These legal fence statutes recognized the rancher's right to allow cattle to roam.

■ Although the "fence out" rule prevails in this state, there are some important legislative exceptions to the rule. Idaho and other western states provide for the creation of herd districts as an alternative to landowners who wish to protect their land from damage caused by roaming stock,

but do not wish or cannot afford to fence their land. Idaho Code § 25–2401 *et seq.* permits districts within a county to petition for the creation of a herd district. If a majority of the landowners owning more than fifty percent of the land in the district vote to create a herd district, livestock are prohibited from running at large within the district, and a landowner may recover for damages caused by animals straying upon his property, regardless of whether it is enclosed by a legal fence.[3] In essence the creation of a herd district in Idaho reinstates the English common law within that district, placing a duty on the livestock owner to fence in his stock and holding him liable for damages caused if his stock escapes onto another's land, regardless of whether that land is fenced or not.

In 1963, the Idaho Legislature amended the herd district law, I.C. § 25–2402, to not allow inclusion of open range in a herd district.[4] Open range was defined as follows: "all uninclosed lands outside cities and villages upon which by custom, license or otherwise, livestock, excepting swine, are grazed or permitted to roam." The legislature also added to the section a provision that excepts from the application of herd district laws any livestock roaming or straying into the district from open range, unless the district is enclosed by a legal fence.

■ In 1961, the Idaho Legislature passed a statute, I.C. § 25–2118,[5] relieving

---

full amount of damages he has sustained by reason of such trespass, to be recovered with costs in any court having jurisdiction."

**3.** I.C. § 25–2402 reads in part:

"Petition for district.—A majority of the landowners in any area or district described by metes and bounds not including open range and who are also resident in, and qualified electors of, the state of Idaho may petition the board of county commissioners in writing to create such area a herd district. Such petition shall describe the boundaries of the said proposed herd district, and shall designate what animals of the species of horses, mules, asses, cattle, swine, sheep and goats it is desired to prohibit from running at large, also prohibiting said animals from being herded upon the public highways in such district; and shall designate that the herd district shall not apply to nor

cover livestock, excepting swine, which shall roam, drift or stray from open range into the district unless the district shall be inclosed by lawful fences and cattle guards in roads penetrating the district so as to prevent livestock, excepting swine, from roaming, drifting or straying from open range into the district . . . .

Open range means all uninclosed lands outside cities and villages upon which by custom, license or otherwise, livestock, excepting swine, are grazed or permitted to roam."

**4.** 1963 Idaho Sess.Laws, ch. 264, p. 674.

**5.** "25–2118. Animals on open range—No duty to keep from highway.—No person owning, or controlling the possession of, any domestic animal running on open range, shall have the duty to keep such animal off any highway on such range, and shall not be liable for damage to any

owners of livestock roaming on open range of the duty to keep such stock off the highway and absolving them of liability for damages caused by a collision between a vehicle and the livestock. Open range was defined as "all uninclosed lands outside of cities, villages and herd districts, upon which cattle by custom, license, lease or permit, are grazed or permitted to roam." Idaho Code § 25–2118 impliedly makes it the duty of the person owning, or controlling the possession of livestock, to keep them off any highway not located in open range; and does not absolve such a person of liability for damages caused by a collision between a vehicle and the animal, unless the highway is in open range. *Whitt v. Jarnagin*, 91 Idaho 181, 418 P.2d 278 (1966); *Corthell v. Pearson*, 88 Idaho 295, 399 P.2d 266 (1965).

## II

■ The prior review of Idaho law reveals that there are two geographical areas other than cities and villages recognized in this state in relation to the liability of livestock owners for damage done by their stock to another's land. First, herd districts created pursuant to I.C. § 25–2401 *et seq.* where within the district the English common law rule of prohibiting livestock from running at large is reinstated. Since 1963 herd districts could not contain "open range," which was defined as "all uninclosed land outside cities and villages which by custom, license or otherwise, livestock, excepting swine, are grazed or permitted to roam." 1963 Idaho Sess.Laws, ch. 264, p. 674. The second area contains "open range" as defined by I.C. § 25–2402 and all other areas of the state not within cities, villages, or already created herd districts. Herd districts may be created in this area by the landowners for protection against roaming livestock so long as the land in question is other than "open range" as defined by I.C. § 25–2402. It is in this area where the rule that livestock owners are

not required to fence their stock in and are not liable for damages caused by their stock to another's land unless the landowner's property is enclosed by a legal fence obtains.

The trial court held that it was the duty of Yanke to keep his cattle fenced in because the area was an area of enclosed lands and not located in open range. Testimony was received at trial that the area in question had been one of enclosed land where cattle were not permitted to roam for more years than any witness could remember to the contrary. It appears that the trial court relied on this testimony and the definitions of "open range" contained in I.C. § 25–2402 in determining the area was not in open range and thus placing a duty on Yanke to fence his livestock in. Maguire concurs with the trial court that the right of livestock to roam freely is restricted to "open range" and that the controlling definition of "open range" is contained in I.C. § 25–2402 and § 25–2118, which includes only land where historically livestock were grazed or permitted to roam.

This analysis, in essence, creates a third area relating to liability for damage caused by roaming livestock. This area would encompass all land which livestock by custom, license, lease, or permit are not permitted to roam at large or graze. In this region, a livestock owner would have a duty to fence his cattle in, and there would be no duty on a landowner to fence cattle out in order to recover damages caused by roaming livestock.

■ Yanke contends that the trial court erred in using the analysis above in determining he had a duty to fence his cattle in. Yanke argues that this Court's rejection of the English common law duty to keep one's livestock enclosed in *Johnson v. Oregon Short Line Ry. Co., supra,* and the adoption of the rule of no duty to fence in livestock in later cases, plus the enact-

vehicle or for injury to any person riding therein, caused by a collision between the vehicle and the animal. 'Open range' means all uninclosed lands outside of cities, villages and herd

districts, upon which cattle by custom, license, lease, or permit, are grazed or permitted to roam."

ment of fence laws by the Idaho Legislature, firmly establish that within this state there is no duty for a livestock owner to fence his cattle in. Yanke asserts that notwithstanding the fact that the area in question was not one where by custom livestock were grazed or permitted to roam, no liability attaches to a livestock owner for damage done by his stock straying onto another's land, unless the damaged landowner's property is enclosed with a legal fence. Yanke argues that the only method by which a landowner may relieve himself of his duty to fence livestock out and place upon the livestock owner the duty to fence his stock in is the creation of a herd district. We agree.

The abrogation of the English common law duty of a livestock owner to fence his stock in and the passage of fence laws which placed the duty on the landowner to fence livestock out is a phenomenon of the western cattle states.[6] Since the western states adopted such rules in response to a common problem during the early settlement of this region in the late 1800's and early 1900's, as did Idaho, a review of these states' approach to the question of a livestock owner's liability for damage caused by their trespassing stock would be helpful in determining the meaning of our own legislation. "Countless avenues and forms of communication and interaction among the jurisdictions lead to so much parallelism among the laws of different states as the result of emulation, adaption and outright copying that common patterns and standard modes of dealing with common problems become evident." Sutherland Statutory Construction § 52.03 (4th ed. Sands rev. 1973).

We have extensively reviewed the statutory and case law of Washington, Oregon, Montana, Wyoming, Nevada, Colorado, Arizona and New Mexico and we find no support for the appellant Maguire's position that a livestock owner has a duty to fence his stock in areas where livestock have not historically been grazed or permitted to roam. On the contrary, these states have adopted the general rule that livestock owners may range their stock in all areas of the state with no obligation to prevent them entering upon the unenclosed premises of another. These states require that a landowner cannot recover for damage to his lands caused by trespassing livestock unless their land was enclosed by a legal fence.[7]

In Washington, Oregon, Montana, Wyoming, New Mexico and Arizona the respective state legislatures adopted legislation, the equivalent of our herd district law, which permit certain counties or parts of the states by a vote of the people within such subdivision to determine whether livestock should continue to be allowed to run at large and landowners be compelled to rely on a legal fence for protection, or whether livestock owners should be required to fence their stock in and landowners allowed to recover for damage caused by trespassing stock, regardless of whether their land is enclosed by a legal fence.[8] The case law and legislation from these jurisdictions clearly shows that in all other areas in the state not designated as herd districts livestock are permitted to run at large and it is the duty of the landowner to fence the stock out.

6. *Lazarus v. Phelps, supra*; Scott, The Range Cattle Industry: Its Effect on Western Land Law, *supra*.

7. *Ricca v. Bojorquez*, 13 Ariz.App. 10, 473 P.2d 812 (1970); *Bolten v. Gates*, 105 Colo. 571, 100 P.2d 145 (1940); *Schaefer v. Mills*, 72 Colo. 82, 209 P. 643 (1922); *Dunbar v. Emigh*, 117 Mont. 287, 158 P.2d 311 (1945); *Chase v. Chase*, 15 Nev. 259 (1880); *Grubb v. Wolfe*, 75 N.M. 601, 408 P.2d 756 (1965); *Kendall v. Curl*, 222 Or. 329, 353 P.2d 227 (1960); *Bly v. McAllister*, 58 Wash.2d 709, 364 P.2d 500 (1961); *Stilwell v. Nation*, 363 P.2d 916 (Wyo.1961); Ariz.Rev.

Stat. § 24–344 (1956); Colo.Rev.Stat. § 35–46–10 (1973); Mont.Rev.Codes Ann. § 46–1409 (1947); Nev.Rev.Stat. § 569.450 (1977); N.M. Stat.Ann. § 47–17–2 (1953); Or.Rev.Stat. § 608.015 (1977); Wash.Rev.Code § 16.60.015 (1976); Wyo.Stat. § 11–33–110 (1977).

8. Ariz.Rev.Stat. §§ 24–341 *et seq.* (1956); Mont.Rev.Codes Ann. §§ 46–1501 *et seq.* (1947); N.M.Stat.Ann. §§ 47–13–1 *et seq.* (1977); Or.Rev.Stat. §§ 607.008 *et seq.* (1977); Wash.Rev.Code §§ 16.24.010 *et seq.* (1976); Wyo.Stat. §§ 11–33–101 *et seq.* (1977).

■ The trial court erred in restricting the right of livestock owners to roam stock to only those areas where by custom, license, or permit livestock are grazed or permitted to roam. The adoption of such a rule creates de facto herd districts in areas where by custom livestock have not been permitted to roam and thereby renders I.C. § 25–2401 et seq. unnecessary. The trial court, in effect, applied herd district rules relating to liability for roaming livestock to these areas without requiring the creation of a herd district. It is a general rule of statutory construction that courts should not nullify a statute or deprive a law of potency or force unless such course is absolutely necessary. State v. Gibbs, 94 Idaho 908, 500 P.2d 209 (1972); Sampson v. Layton, 86 Idaho 453, 387 P.2d 883 (1963). It appears the intent of the legislature in enacting I.C. § 25–2401 et seq. was that for areas where the historical use has been one of enclosed lands, the landowners in that area must petition and vote to designate that area a herd district in order to change the Idaho law regarding liability for damage by roaming livestock.

■ The statutory definitions of "open range" as set forth in I.C. §§ 25–2402 and 25–2118 are inconsistent with the case law concept of "open range" as unfenced, unenclosed, public range, domain or common. Kelly v. Easton, 35 Idaho 340, 207 P. 129 (1922); Strong v. Brown, 26 Idaho 1, 140 P. 773 (1914); City of Bellevue v. Daly, 14 Idaho 545, 94 P. 1036 (1908); Swanson v. Groat, 12 Idaho 148, 85 P. 384 (1906). It is a matter of common understanding that definitional provisions do not purport to prescribe what meanings shall attach to the defined terms for all purposes and in all contexts but generally only establish what they mean where they appear in that same act. Sutherland Statutory Construction § 47.07 (4th ed. Sands rev. 1973).

■ Prior to 1963, I.C. § 25–2402 contained no definition of "open range." Herd districts were allowed to be created in any part of this state. This permitted persons within a geographical area to reinstate in that area the English common law duty

of a livestock owner to confine his stock that was abolished in Idaho by the holding in Johnson v. Short Line Ry., supra, and to avoid the necessity of constructing a legal fence as required by I.C. § 25–2202 in order to recover damages caused by trespassing stock. In 1963, as was previously discussed, the legislature inserted a definition of "open range" in I.C. § 25–2402 and stated that herd districts could not be created in such area. It is respondent Maguire's contention that this definition of "open range" should be applied to our entire body of case law and thus limit the rights of livestock owners to roam their stock at large to "open range" as defined by the statute. This interpretation is inconsistent with not only our case and statutory law, rules of statutory construction, but also the common pattern of dealing with this problem in the West as evinced by the laws of eight of our sister states. Prior to 1963, herd districts could be created in any part of Idaho. It is clear the amendment of I.C. § 25–2402 by the inserting of a definition of "open range" was designed to protect the rights of livestock owners by prohibiting herd districts in areas where they historically grazed stock, rather than limiting the area where livestock owners were free to let their stock roam at large. Under our decision, herd districts may still be created in any area not within "open range" as defined in I.C. § 25–2402. The passage of I.C. §§ 25–2402 and 25–2118, with their accompanying definition of "open range" in terms of historical use, was not intended to and does not change the law of this state that with the exception of cities, villages, and herd districts, livestock may run at large and graze upon unenclosed lands in this state.

### III

■ The trial court also appeared to base its finding that Yanke had a duty to fence his cattle in on the fact that the pasture where the cattle were grazed was bounded on one side by a highway. Yanke did have a duty to keep his stock off the highway since his land was not located in

open range under the definition of I.C. § 25–2118. Idaho Code § 25–2118 was passed to protect the livestock owner running stock on open range from liability caused by collisions of vehicles with livestock; and, impliedly, to place a duty on the livestock owner not running on open range to keep the stock off the highway. The statute would seem, however, to have reference to the relationship existing between livestock owners and motorists and is inapplicable to the relationship between livestock owners and adjoining landowners. In construing a statute, not only should the terms of the statute be examined, but legislative intent is also to be collected from the context, occasion and necessity of the law, from the mischief felt, and from the remedy in view. *Noble v. Glenns Ferry Bank, Ltd.*, 91 Idaho 364, 421 P.2d 444 (1966). It is obvious that the statute addresses itself to the problem of increasing the spread of highways and the flow of high-speed traffic through areas of open range grazing of livestock and where liability should be placed when a collision between livestock and auto occurs. It does not address itself to the question of liability of a livestock owner for damage caused by his stock straying across a highway and on to adjoining landowner's property. Yanke had a duty to keep his cattle off the highway, but this duty was owed to motorists on that road, not to Maguire.

■ The trial court erred in holding that Yanke had a duty to fence his cattle in and that Maguire had no duty to fence the cattle out in order to recover for the damages occasioned by the cattle straying upon his land. The rule simply stated is that in all areas in this state, with the exception of herd districts, villages, and cities, there is no duty for a livestock owner to confine his cattle to his own land and that no liability attaches to that livestock owner for damage occasioned by his stock straying onto another's property, unless the damaged landowner's property is enclosed by a legal fence.

Judgment reversed.

McFADDEN and BISTLINE, JJ., concur.

BAKES, Justice, concurring in the reversal, but dissenting in the disposition:

I disagree with the majority's analysis of the law governing the liability of owners for damage caused by their trespassing livestock and its conclusion that defendant appellant Yanke cannot be held liable for the damage his cattle caused plaintiff respondent Maguire's hayfield.

The majority is correct in stating that the English common law rule that an owner is strictly liable for trespasses of his animals has generally not been applicable in Idaho. However, the rule which the majority finally adopts after an inconsistent analysis, some of which I frankly do not understand, is that except for cities, villages and herd districts, all land in the state of Idaho is "open range" upon which cattle can roam unfenced without incurring liability upon its owners for trespass. I do not believe that is the law in Idaho.

While the statutes and the cases have addressed the "open range" concept from the earliest times, it was not until 1961 that the legislature made any attempt to define "open range." In that year the legislature enacted I.C. § 25–2118 providing that the owner of a domestic animal running on the "open range" which strayed upon a highway right of way was not liable for damage to any vehicle or injury to person riding therein. That statute defined "open range" as "all uninclosed lands outside of cities, villages and herd districts, upon which cattle by custom, license, lease, or permit, are grazed or permitted to roam." In 1963 the legislature amended the herd district law, I.C. § 25–2402, to similarly define "open range."[1] The majority refuses to follow those two express legislative definitions of "open range." It states, *ante* at 92, that

---

1. I.C. § 25–2402 defines open range as "all uninclosed lands outside cities and villages upon which by custom, license or otherwise, livestock, excepting swine, are grazed or permitted to roam."

"[t]he statutory definitions of 'open range' as set forth in I.C. § 25–2402 and 25–2118 are inconsistent with the case law concept of 'open range' as unfenced, unenclosed public range, domain or common. *Kelly v. Easton*, 35 Idaho 340, 207 P. 129 (1922); . . . ." However, the so-called case law concept of "open range" which the majority gleans from *Kelly v. Easton* and the other cited cases was based upon statutes, as shown by the following portion of the *Kelly* opinion quoted by the majority, *ante* at 88;

> " 'The common-law rule that every man must confine his own cattle to his own land does not obtain in this state, and in *Strong v. Brown*, 26 Idaho 1, 140 P. 773, 52 L.R.A.,N.S., 140, Ann.Cas. 1916E, 482, *it is held that under our statute* (C.S., c. 82), if a landowner fails to fence out cattle lawfully at large, he may not recover for loss caused by such livestock straying upon his uninclosed land.' " (Emphasis added.)

The concept of open range which the majority found in *Kelly v. Easton, supra*, and prior cases was not based upon any common law or case law concept, but was actually based upon pronouncements by the legislature in chapter 82 of the Compiled Statutes entitled "Animals Running at Large and Trespassing." The majority's conclusion that the clear legislative pronouncements in I.C. §§ 25–2402 and 25–2118 are inconsistent with case law definitions and concepts of open range fundamentally misconceives the basis upon which those early cases were decided.

The legislature has said in I.C. § 25–2402 and 25–2118 that "open range" includes only those unenclosed lands upon which *by custom, license or otherwise livestock have been permitted to roam.* The "open range" rule which the majority would apply in this case is inapplicable to the facts of this case because, as the trial court found, the lands in question here were not unenclosed lands upon which livestock have by custom, license or otherwise been permitted to roam.

The majority asserts, *ante* at 90, that in Idaho there are only two classifications of land for purposes of determining the liability of livestock owners for damage done by their animals to another's land. One class includes cities, villages and herd districts, created pursuant to I.C. §§ 25–2401 *et seq.*, where animal owners are strictly liable for damage their animals do to another's property. The second classification encompasses, they assert, " 'open range' as defined by I.C. § 25–2402 and all other areas of the state not within cities, villages, or already created herd districts," *ante* at 90, where the animal owner bears no liability unless the damaged property was enclosed by a legal fence. The majority reverses this case, claiming that the trial court erred in recognizing a third classification of land relating to liability for damage caused by roaming livestock. This third classification would encompass land where livestock by custom, license, lease or permit have not been permitted to roam at large or graze. Although no statutory herd district may have been created in these areas, the trial court in essence reasoned that the custom to fence cattle in precludes application of the traditional open range rules. I agree with the trial court that the legislative definitions of "open range" which are contained in I.C. §§ 25–2401 and 25–2118 support the conclusion that the open range rule is not to be applied in Idaho to lands where cattle by custom have not been permitted to roam unfenced.

If, as the majority holds, all land in Idaho is either in open range or in a herd district, city or village, there would be no land in the state where a herd district could be created. I.C. § 25–2402 specifically states that open range cannot be organized into herd districts. The majority avoids reaching the incongruous result that there is no land in Idaho where a herd district may be created only by saying, *ante* at 92, that the legislature's definition of open range in I.C. §§ 25–2402 and 25–2118 "was not intended to and does not change the law of this state that with the exception of cities, villages, and herd districts, livestock may run at large and graze upon unenclosed lands in this state."

The majority contends that the two statutory open range definitions are to be construed as having no effect on the operation of the Idaho open range law. These two provisions are the only legislative definitions of open range which appear in the Idaho Code and, as discussed hereafter, this Court has never had occasion to define judicially which lands in the state are open range lands. I believe the majority errs in assigning to our legislative definitions of "open range" the unnecessarily narrow import that it uses to reach its result in this case.

The two legislative definitions are explicit in defining the concept of "open range". In the absence of any other judicial or legislative interpretation of the term "open range" indicating that the two statutory provisions in I.C. §§ 25–2402 and 25–2118 should not be used in delineating the extent of the open range rules in Idaho, this Court should not arbitrarily decide that those definitions are inapplicable to the determination of liability in this case. We should interpret our statutes to recognize that for purposes of determining liability of trespassing animals, there are three, not two, classes of land in Idaho: (1) open range, as defined in I.C. §§ 25–2118 and –2402, where cattle by custom have been permitted to roam; (2) herd districts, villages and towns, where owners are liable for damage caused by their trespassing animals "without regard to the condition of [their] fence," I.C. § 25–2408; and (3) non-open range, such as the land in this case which is neither in class (1) nor (2), where strict liability has not been imposed on animal owners, but where the custom has not been to allow animals to graze unfenced.

Present conditions and practices in Idaho are inconsistent with the expansive definition of open range enunciated by the majority. The open range laws resulted from the unique conditions existing during the early days of the western development when vast areas of grazing land and the sparse population then living in the area made it more practical to fence animals out of the relatively small sections of land devoted to farming than to fence cattle in on the larger grazing ranges. However, conditions in Idaho have changed substantially. This Court should not expand liability rules tailored for nineteenth century open range practices in contradiction to the recent statutory enactments concerning open range definitions when the conditions for which they were developed have substantially passed.

As previously noted, the majority found the definition of open range as defined in I.C. § 25–2402 to be "inconsistent with the case law [definition and] concept of 'open range'," relying upon *Kelly v. Easton, supra; Strong v. Brown*, 26 Idaho 1, 140 P. 773 (1914); *City of Bellevue v. Daly*, 14 Idaho 545, 94 P. 1036 (1908); and *Swanson v. Groat*, 12 Idaho 148, 85 P. 384 (1906). However, no Idaho case has addressed the issue of whether all lands in this state outside of cities, villages and herd districts were "open range."

The first Idaho case in point of time to mention the open range rule is *Johnson v. Oregon Shortline Ry. Co.*, 7 Idaho 355, 63 P. 112 (1900). That case involved an interpretation of Revised Stat. 2679 (1887), which required railroads to maintain fences along their tracks whenever the tracks passed through or abutted private property. This Court held that Revised Stat. 2679 [presently I.C. § 62–406, as amended] was a police regulation for the benefit of the general public and was not a statute intended solely to benefit adjoining or abutting private landowners, as was urged by the defendant railroad company. The fact that plaintiff's animals entered the railroad right of way from private property not owned by the plaintiff prior to being struck by a passing train was held not to bar plaintiff's recovery. *Johnson* did not decide the meaning and extent of the Idaho open range law.

In *Swanson v. Groat, supra*, the Court held that in this state a stockman could not deliberately drive animals onto the unfenced land of another and escape liability for trespass, even if the open range rule were applicable. The extent of the open range rule was not decided. The rule in

*Swanson* applied whether the land upon which the animals were driven was open range or not, as evidenced by the following passage:

"[O]ne who willfully and deliberately drives his stock upon the lands of another, *whether inclosed or uninclosed*, and holds, herds and grazes them upon such lands over the 'protests and objections' of the owner is liable in damages for the trespass. Such willful, deliberate and intentional conduct cannot be justified upon the theory that the stock had a right of their own accord to roam over and graze upon such land." 12 Idaho at 151–52, 85 P. at 385 (emphasis supplied).

In *City of Bellevue v. Daly, supra,* the plaintiff city was held not entitled to have the defendant landowner enjoined from allowing his cattle to roam freely upon his own land because the herd was polluting drinking water in unfenced city ditches which crossed the pasturage. The Court referred to the open range rules, noting that it would be incongruous to require the defendant landowner to fence his cattle off the city's easement across his own land while no such fencing requirement would have existed if the cattle were on open range lands. The Court said, "Certainly he cannot have any less right on his own lands and in his own field than he would have on the public common or public domain." 14 Idaho at 550, 94 P. at 1038. The court did not decide whether the land surrounding the ditch was open range. It concededly was not. The court was merely postulating that had the land been open range the owner would not have been required to fence the cattle out of the ditch, and that surely on his own private ground he would have no greater obligation.

In 1914, in *Strong v. Brown, supra,* the owner of lands subject to the open range rule was held not to be liable for damages to livestock running at large which were injured by falling into pits or excavations on the property of the owner. There was no question but that the land involved in

the action was open range. The Court was not called upon to define what lands in Idaho were governed by the open range rules.

The question presented in *Kelly v. Easton,* 35 Idaho 340, 207 P. 129 (1922), was whether a landlord could claim open range privileges against his tenant. The Court held that the open range rules do not apply to the relation existing between a landlord and his tenant. Once again, the Court was not called upon to determine the extent of open range in Idaho.

These early cases, cited by the majority as providing a case law definition of open range inconsistent with the legislature's definitions in I.C. §§ 25–2118 and –2402, enacted in 1961 and 1963 respectively, simply do not contain the judicial definitions that the majority claims to find in them. Each was concerned with an issue different from that which we face in this case, *i. e.,* what lands in Idaho are subject to the law of the open range. How the legislatures of our sister states have approached the open range problem does not relieve us of the duty to examine our own law regarding the open range privilege in Idaho as it exists today in light of the recent enactments of our legislature and the conditions which *now* prevail in the state. Our statutes contemplate three classes into which lands in Idaho may fall for purposes of determining the liability of livestock owners: (1) "open range", as defined in I.C. §§ 25–2118 and –2402, where cattle by custom have been permitted to roam; (2) herd districts, villages and towns, where owners are liable for damage caused by their trespassing animals "without regard to the condition of [their] fence," I.C. § 25–2408; and (3) non-open range, such as the land in this case, which is neither in class (1) nor (2), where strict liability has not been imposed on animal owners, but where the custom has not been to allow animals to graze unfenced.

In *Soran v. Schoessler,* 87 Idaho 425, 394 P.2d 160 (1964), construing I.C. § 25–2118,[2]

---

2. "25–2118. Animals on open range—No duty to keep from highway.—No person owning, or

controlling the possession of, any domestic animal running on open range, shall have the duty

this Court recognized that in Idaho there are three classifications of land with respect to laws governing livestock control: (1) open range, where a livestock owner has no duty to fence his animals in; (2) herd districts, where an owner is strictly liable for damages his animals do in trespassing upon the lands of others; and (3) land neither open range nor in a herd district. 87 Idaho at 431, 394 P.2d at 163. The issue in *Soran* was whether a cattle owner was liable to a motorist for damages which resulted in a collision with defendant's cow on a public highway. I.C. § 25–2118 states that a stockman is not liable for damages in such a collision if the animal involved is running on "open range," defining open range as noted above. The accident in *Soran* did not occur in a statutory herd district. However, the Court held that the collision did not occur in "open range" either:

"There [is] no evidence adduced in this cause to show that in the particular area where the accident occurred appellant's cattle, by custom, license, lease, or permit, were grazed or permitted to roam on unenclosed lands such as referred to in such section of the statute.

"As hereinbefore stated the fenced pasture land, owned by appellant, was neither open range nor located in a herd district area. . . ." 87 Idaho at 431, 394 P.2d at 163.

Upon finding that open range privileges did not exist in the area involved, the Court held that the defendant stockman should be liable if he were negligent in containing his herd, since neither the liability principles of a herd district nor the cattleman's privilege of the open range rule were applicable in the case.

"The evidence shows that the appellant had allowed the fence to deteriorate and that at the time of the accident involved in this cause the fence did not conform to standards prescribed for fences, I.C. §§ 35–101 and 35–102; the evidence sup-

ports the findings in that regard; also it sustains the trial court's conclusion that appellant 'failed to act as a reasonable and prudent person with respect to the maintenance of this pasture fence and in allowing his livestock to be on a public highway'; that respondent acted as a reasonable and prudent person at the times mentioned; that appellant was guilty of negligence in the premises; and that such negligence constituted the proximate cause of respondent's damage." 87 Idaho at 431–32, 394 P.2d at 163.

In my opinion, in those areas of the state where by tradition and custom livestock have not been allowed to roam and graze unfenced, but where no statutory herd district has been formed by the landowners, a negligence standard should be used to determine the liability of a livestock owner for damages done by his animals in trespassing, whether upon highways as in *Soran*, or upon the lands of another. This would strike a middle ground between the no liability rule on open range and the strict liability imposed upon animal owners in a herd district. The standard to which a trespassing animal's owner would be held under this approach would be that of a reasonably prudent livestock owner in the particular area involved. *Soran v. Schoessler, supra.* No injustice to stockmen can arise if they are required to comply with the normal practices of restraining their herds which prevail in the areas where they graze their animals.

While in this case the district court found that "the defendant's cattle broke through fences on the property leased by the defendant and crossed the county road and went on to the hay fields of the plaintiff Maguire," the court made no finding that the defendant "failed to act as a reasonable and prudent person with respect to the maintenance of this pasture fence and in allowing his livestock" to go upon the lands

---

to keep such animal off any highway on such range, and shall not be liable for damage to any vehicle or for injury to any person riding therein, caused by a collision between the vehicle and the animal. 'Open range' means all uninc-

losed lands outside of cities, villages and herd districts, upon which cattle by custom, license, lease, or permit, are grazed or permitted to roam."

of the plaintiff. *Soran v. Schoessler*, 87 Idaho 425, 431, 394 P.2d 160. Without such a finding of negligence on the defendant's part, no liability would accrue. The district court concluded that defendant's cattle had crossed the county road to get to plaintiff Maguire's property and that such crossing constituted an illegal trespass, relying on *Soran v. Schoessler, supra*. However, *Soran* does not establish highways as zones creating absolute liability to the owner of any cattle which crosses them. *Soran* merely established for highways what the Court should now confirm to be the rule with regard to all land which is neither open range nor a herd district—that the owner of cattle must act as a reasonable and prudent person with respect to the maintenance of his pasture fences and the controlling of his cattle.

The majority opinion also fails to discuss one of the principal issues in the case raised by the recent decision of this Court in *Legg v. Barinaga*, 92 Idaho 225, 440 P.2d 345 (1968). In the *Legg* case respondents were raising sheep on approximately 12,000 acres of owned and leased land while the appellants were raising cattle on approximately 1,200 acres of unfenced grazing land, together with certain fenced grazing land. The opinion of the Court noted that "respondents and appellants have twelve to thirteen miles of common boundary, none of which is fenced." The opinion of the Court notes that the trial court found "appellants had overstocked their grazing land to the degree that their cattle continuously and repeatedly invaded respondent's land in search of food and water," and concluded that "a wilful trespass resulted when appellant's cattle invaded the lands of respondents." 92 Idaho at 227, 228, 440 P.2d at 346–348. This Court on appeal said that while "the mere turning loose of livestock upon one's own premises or upon the public domain has generally been recognized as not per se constituting a wilful or intentional trespass, notwithstanding that one knew, or should have known, that the livestock might stray to another's land," nevertheless where the trespass results from the overstocking of one's own grazing land causing the cattle to cross onto a neighbor's land, liability results. The plaintiff Maguire made the same arguments in this case and introduced evidence to the effect that Porter, the lessor of the appellant Yanke, advised Yanke not to place more than one hundred head of cattle on the land; nevertheless Yanke placed one hundred thirty head of cattle with their calves, together with eight bulls·on the leased land. The trial court concluded that "this discrepancy does not appear to be sufficient to warrant punitive damages." The trial court's observation was no doubt correct with regard to the award of punitive damages because in order to have sustained an award of punitive damages for overstocking it would have been necessary to show that the action of the wrongdoer was "wanton, malicious, or gross and outrageous," or where the facts were such as to imply malice and oppression. *Cox v. Stolworthy*, 94 Idaho 683, 685, 496 P.2d 682 (1972). However, *Legg v. Barinaga, supra*, makes it clear that a mere knowing overstocking of land upon which cattle are put to pasture renders the owner of the cattle liable if they leave the land and trespass upon the lands of another. Not only does the *Legg* case seriously conflict with the expansive open range privilege which the majority opinion grants in this case to owners of livestock, but it seems to me it also requires that this matter be remanded to the trial court to specifically rule upon the plaintiff's theory that the defendant Yanke overstocked his land, thus causing his cattle to break out and to trespass onto the plaintiff's land. The trial court's conclusion that the amount of overstocking, which he described as the discrepancy. between what the landlord advised Yanke to place on the land and the amount of cattle which Yanke in fact placed on the land, did "not appear to be sufficient to warrant punitive damages" would not preclude the trial court from finding, however, that the overstocking was sufficient to warrant tort liability under the *Legg* case.

Therefore, I would reverse the judgment of the district court and remand the case for a new trial to (1) determine whether the

defendant Yanke was negligent, under the ruling of this Court in the *Soran* case, in the maintenance of his fences and managing his cattle prior to the trespass of his cattle into Maguire's alfalfa field; and (2) to determine whether or not Yanke placed more cattle upon the land than it would carry resulting in the cattle breaking out and trespassing onto Maguire's property, which would establish the liability of Yanke under the *Legg* case.

SHEPARD, C. J., concurs.